JOHN A. TYRRELL

*v.*

SAMUEL S. WARD, Receiver.

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1. SUBROGATION—*discharge of prior incumbrance by junior mortgagee —rights under intervening judgment lien.* Where a person loaning money, taking a deed of trust as security, applies a portion of the money so loaned in the discharge of a prior incumbrance on the premises embraced in his deed of trust, for the purpose of making his security a first lien, he will, in equity, be subrogated to the rights of the prior lienholder in respect to his security, although there be a formal release of the prior incumbrance, and the transaction will be treated as an assignment of such prior lien or incumbrance, so as to cut off an intervening lien of a judgment recovered against the grantor in the trust deed after the execution and recording of such deed, but before the money loaned was actually paid over, so far as concerns the lien of the prior incumbrance.

2. In such case a purchaser under the judgment will not be allowed to assert his title as against the junior mortgagee so advancing the money to discharge the prior incumbrance, without first paying to the latter the sum so advanced by him, and after a sale under the junior mortgage, cutting off the equity of redemption sold under the judgment, the title of the purchaser under the judgment will be extinguished.

3. SAME—*execution sale of equity of redemption—what interest in the land will pass.* Where a party at the time of the recovery of a judgment

against him, has only an equity of redemption in real estate, the lien of the judgment will attach only to such equity of redemption, and that is all that will pass to a purchaser under execution upon such judgment, and if the latter fails to redeem from prior incumbrances on the land, and suffers it to be sold under a power of sale, in favor of one who succeeds to such prior lien, all rights acquired under the execution sale will be gone.

4. INURING OF TITLE—*as between a mortgagor and a junior mortgagee.* Where prior liens are discharged restoring the legal title in a party who has given a deed of trust containing covenants of title, the title so acquired by the grantor on redemption from prior trust deeds, inures to the trustee in the latter deed of trust for the benefit of the party secured thereby.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. GEO. SCOVILLE, Mr. WM. C. GRANT, and Mr. L. H. BISBEE, for the appellant:

The lien of the Worthington judgment having accrued on the 12th of February, 1876, which was before the money borrowed under the junior deed of trust was paid over, was prior and paramount to that of the trust deed. *Schultze* v. *Houfes,* 96 Ill. 335.

A valid mortgage, without any indebtedness or liability, is impossible. The making and recording of the deed of trust to Smith, to secure notes made by Hayes, payable to his own order, was of no validity until the notes were assigned. *Jackson* v. *Willard,* 3 Johns. 40; *Lucas* v. *Harris,* 20 Ill. 165; *Vansant* v. *Allmon,* 23 id. 30.

It was not a mortgage to secure advances, as to Bayard or any other person, until the advance was agreed upon, in April, 1876. Therefore, the rights of Bayard, as mortgagee, were subject to all liens then existing against the land, and so, necessarily to that of the Worthington judgment. *Ackerman* v. *Hunsicker,* 28 N. Y. 53; *Ladue* v. *Detroit and Milwaukee R. R. Co.* 13 Mich. 380; *Ter-Hoven* v. *Kerns,* 2 Pa. St. 96; *Preble* v. *Conger,* 66 Ill. 370.

The rule of subrogation is, that if the person who pays the debt is compelled to pay to protect his own interests, then

the substitution should be made. A mere stranger or volunteer can not thus be subrogated to the creditor's rights. *Hough* v. *Ætna Life Ins. Co.* 57 Ill. 318; *Young* v. *Morgan,* 89 id. 199.

Ward paid no new consideration for his purchase. He has the warranty deed of Goudy & Chandler for his protection, and has parted with no value for the conveyance, and has no remedy at law, since the legal title only must prevail in an action of ejectment. *Chapin* v. *Billings,* 91 Ill. 543; *Reese* v. *Allen,* 5 Gilm. 236; *Dawson* v. *Hayden,* 67 Ill. 52; *Rice* v. *Brown,* 77 id. 549.

Mr. GEO. W. SMITH, for the appellee:

The release of the Hosmer deed was made on April 6, 1876. Smith then became vested with the legal title. He held it until the sale of April 28, 1879. He then, in pursuance of that sale, conveyed to Mrs. Bayard, who conveyed to Goudy & Chandler, and they to Ward. Ward has therefore the legal title. *Chicago, Rock Island and Pacific R. R. Co.* v. *Kennedy,* 70 Ill. 350; *Chapin* v. *Billings,* 91 id. 539.

The purchase of an equity gives the purchaser the estate which he buys in the condition in which it was when bought. *Maghee* v. *Robinson,* 98 Ill. 458.

Tyrrell stands precisely as he would have stood had he purchased from Hayes on February 12, 1876. His equitable interest was subject to the trust deed of December 1, 1875, of which he had notice. If Worthington, when his judgment was recovered, had notified Smith, and if the facts had been that no agreement had then been entered into between Bayard and Hayes, and that the former was under no legal obligation to make the loan, and no money had been paid, then Smith could have governed himself accordingly. Or if Worthington had filed a bill asking that any surplus be paid to him rather than to Hayes, his judgment would have been protected. *Schultze* v. *Houfes,* 96 Ill. 335; *Buchanan* v. *International Bank,* 78 id. 500; *Preble* v. *Conger,* 66 id. 370.

A mortgage made for the purpose of being sold, is not a lien in the mortgagee's hands as against subsequent purchasers or lien creditors, except from the time the advances are actually made upon it either by the mortgagee or his assignee. Jones on Mortgages, sec. 86.

Kindred to this proposition concerning advances made under or in pursuance of the authority to discharge liens, is the doctrine of subrogation. Bayard was not a volunteer. *Young* v. *Morgan,* 89 Ill. 199.

Messrs. GOUDY & CHANDLER, also for the appellee:

Counsel for appellant claim that when Hosmer made a release, the Worthington judgment attached to the title in fee as it had before to the equity of redemption; but this can not be, because Hayes had conveyed the equity of redemption to Smith with covenants, which caused the title on the release being made *eo instanti* to vest in Smith. It did not vest in a judgment creditor. The title could not be in abeyance. It had to vest somewhere, and that place, and the only place, was in Smith. It was immaterial whether the trustee executed the power so as to foreclose the equity of redemption or not. His deed passed the title vested in him to Mrs. Bayard, and this was transferred until it vested in Ward. *Reese* v. *Allen,* 5 Gilm. 236; *Chapin* v. *Billings,* 91 Ill. 543; *Graham* v. *Anderson,* 42 id. 517; *Rice* v. *Brown,* 77 id. 549.

Bayard also held an older and better equity than Worthington. Hayes, before that judgment, became liable on part of the Bayard notes by pledging them to Hammond, and also to Bayard, upon an agreement for subsequent advances; which, when made, related back to the date of the notes and trust deeds, the same as the rights of Tyrrell related back to the date of the judgment.

If the complainant has an equitable title, it does not date from the time the Worthington judgment was rendered, but from the time of the sheriff's sale. A *bona fide* purchaser

must pay the entire purchase money before he receives notice of an adverse claim.

This principle has been applied to purchasers at execution sales, and it has been held, that if a purchaser (certainly of an equity, merely,) who is charged with notice before the sheriff's sale and payment of purchase money, buys, he is not protected, and his rights do not relate back to the date of the judgment. *In re Howe*, 1 Paige, 395; *Evans* v. *McGasson*, 18 Iowa, 150; *Norton* v. *Williams*, 9 id. 528; *Shaw* v. *Padley*, 64 Mo. 519; *Davis* v. *Owsley*, 14 id. 170; *Wharton* v. *Wilson*, 60 Ind. 591; Wade on Notice, sec. 239; Herman on Executions, sec. 335; *Engles* v. *Byers*, 16 Ark. 543.

That Bayard was subrogated to the rights of Hosmer, who acquired a lien January 20, 1873, and of Meyer and Hammond, who had liens by judgment before December 3, 1875, which were older and better equities than Worthington obtained by his judgment February 12, 1876, and these older equities were added to the legal title vested in Ward before the bill was filed, counsel cited *Young* v. *Morgan*, 89 Ill. 13; *Payne* v. *Hathaway*, 3 Vt. 212; Dixon on Subrogation, 165; *Walker* v. *King*, 44 Vt. 610; *Cole* v. *Malcolm*, 66 N. Y. 363; *Cottrell's Appeal*, 23 Pa. St. 294; *Ellsworth* v. *Lockwood*, 42 N. Y. 89; *Kinney* v. *Harvey*, 2 Leigh, 70; *Patterson* v. *Birdsall*, 6 Hun, 632; *Barnes* v. *Mott*, 64 N. Y. 397; *French* v. *DeBow*, 38 Mich. 708; Jones on Mortgages, secs. 874, 878.

Ward occupies the position of a *bona fide* purchaser without notice that the lien of the deeds to Smith did not attach until after Worthington obtained his judgment.

Mr. JUSTICE WALKER delivered the opinion of the Court:

On the 1st day of December, 1875, Samuel S. Hayes was the owner of twenty-one improved lots in the city of Chicago. For the purpose of effecting a loan of $50,500 he executed three deeds of trust on these lots to George W. Smith, who

had previously consented to act as trustee. The deeds were to secure a number of promissory notes aggregating that sum, and were payable to his own order. One deed included six of these lots, and purported to secure six notes, aggregating $15,000. The second deed of trust was given for seven of the lots, and to secure seven notes, aggregating $15,600. The third deed was for eight lots, and to secure eight notes, aggregating $20,000. The notes were payable at five years from date, with eight per cent interest, payable semi-annually, for which coupons were attached. They bear even date with the deeds, and the deeds stated that Hayes had become indebted to the holders of the notes.

Robert Bayard, of New York, had previously employed Smith in the transaction of business for him in the city of Chicago, and in March, 1876, he wrote Smith, informing him that he had agreed to loan Hayes $50,500 upon these houses and lots as security, and requesting Smith to act for him in consummating the loan. Hayes delivered the abstracts of title to Smith for examination. The abstracts disclosed liens on the property named in the first trust deed, by a prior trust-deed to one Hosmer, dated January 20, 1873, securing an indebtedness of $4000. The lots named in the second trust deed were subject to a lien by trust deed to C. R. Field, for an indebtedness of $8000. The lots described in the third trust deed were subject to a lien of a trust deed to secure upwards of $15,000. The property was likewise subject to the lien of various judgments, to the amount of $9244.89, with interest and costs. Smith received all but three of the notes from Hayes, and received the other three from Hammond, to whom Hayes had pledged them to secure a judgment he held against Hayes, which was a lien on this property, and was paid by Smith when the notes were delivered to him. Afterwards Smith drew on Bayard for $39,600, and received the money, and on its receipt he paid off and discharged all of these liens, and the releases therefor were

delivered to him.    To discharge them, and to pay delinquent taxes against the property, and a note Hayes had given for $700, as a premium for insurance on the property, which Smith paid to prevent a forfeiture of the policies, amounted to near $40,000.    Hayes received in money from Smith on the loan but $1988.55.

Default in the payment of interest having occurred, Smith took possession of the property under the deeds of trust, and the default continuing, in April, 1879, after giving the required notice, he sold the property under the power in the deeds of trust.    Elizabeth Bayard, the widow and legatee of Robert Bayard, who had died, being the holder of the notes, became the purchaser.    Before that time, a petition to enforce a mechanic's lien against the property had been filed, and a decree rendered against the property, subject to the trust deeds, George Scoville being the attorney for the petitioner.    At the sale the property was bid off by George Chandler, for Mrs. Bayard, and it was conveyed to her by the trustee.    In May following she conveyed it to Goudy & Chandler, and received other property in payment, and Goudy & Chandler afterward sold and conveyed it to appellee.

After Hayes had executed the trust deeds to Smith, and they were recorded and delivered, on the 12th day of February, 1876, and before Bayard had received the notes or advanced the money, James M. Worthington recovered a judgment against Hayes, in the Superior Court of Cook county, for $260, and costs.    On the 18th of that month an execution was issued, but was afterwards returned unsatisfied. In the month of May following another execution was issued, and was levied on a part of the lots.    Scoville purchased the judgment, and at the sheriff's sale he bid off the lots and received a certificate of purchase, and assigned it for the consideration of $150 to appellant, Tyrrell.    The property was not redeemed from the sale, and he received a sheriff's deed.

Neither Goudy, Chandler, Ward nor Smith ever had any actual notice of this judgment, sale or deed, but it is claimed they were put upon inquiry by the records, and by what Scoville said at Smith's sale of the property. Scoville testified he gave notice at that sale to all persons present, that there were judgment liens against the property prior to the trust deeds. It appears that Chandler replied: "You refer to the mechanic's lien," and Scoville says he replied: "Yes, and other judgments." McGraw, Smith and Chandler say they did not so understand him. Loomis testifies he forbade the sale on the ground of prior liens which he held against the property. Be this as it may, there is no pretense that Scoville named the Worthington judgment.

Tyrrell filed a bill to remove and set aside Ward's title as a cloud on his own. He does not ask for a conveyance of that title to him, nor does he offer to pay anything for the removal of the incumbrances by Smith with Bayard's money, but proceeds upon the theory that he acquired both the legal and equitable title by the purchase under Worthington's judgment. On a hearing, the Superior Court, on these facts, dismissed the bill, and Tyrrell appeals to this court and asks a reversal.

It is insisted, that notwithstanding the deeds of trust were executed and recorded before the recovery of the Worthington judgment, no money had then been paid on the loan by Bayard, and he did not, nor could he, have any lien; that the execution and recording of such deeds, without any money being paid, were fraudulent as against all creditors and subsequent purchasers for value; that until the money was paid, Bayard could acquire no lien; that as Worthington's judgment was recovered before the money was advanced, it became a prior and preferred lien to these trust deeds to Smith; that being such, and as Bayard failed to pay and discharge it, the sale under it cut off the lien of these trust deeds, and appellant, by his purchase and sheriff's deed, cut

off the lien in favor of Bayard, and appellant has the title. There is not the slightest question, under the evidence in the case, that at the time Worthington recovered his judgment the property in controversy was incumbered by legal, valid and just liens, to nearly, if not quite, the sum of $40,000, and it is fully as clear that they were discharged and satisfied by Smith with the money of Bayard advanced for the purpose, and as a part of the loan of $50,500, which Hayes had effected for this very purpose. It is equally certain that it was the intention of Bayard, Smith and Hayes to pay and discharge these liens, to render the trust deeds to Smith effective, and to make them a prior lien to all others in favor of Bayard. This was their clear and unmistakable purpose. All pretense that it was done for any other purpose is excluded by the testimony. Then what effect did such a payment thus made have on the rights of the parties? Manifestly it subrogated Bayard to all rights of the prior lienholders, precisely as they were held by them. When paid by Smith for Bayard, they were transferred to him, and equity must treat the transaction as an assignment to Bayard, as fully so as had a formal assignment been made and endorsed on the papers evidencing these debts and liens. This, every consideration of justice and good conscience demands. It would be highly inequitable and unjust to defeat the intention of the parties, and visit so heavy a loss on Bayard, when he advanced the money expressly to remove these prior liens and perfect his own. Justice and authority not only sanction, but demand, that Bayard should be subrogated to all of their rights.

Even if such had not been the manifest purpose of Hayes and Bayard, there would have been a strong appeal to equity for such relief. It would be flagrant injustice, after Bayard had paid this large sum, as he did, and for the purposes contemplated, to deny him relief. All of these incumbrancers had the undeniable right to sell the property, and cut off

and defeat the Worthington judgment, unless he redeemed. It was but a lien on the equity of redemption which Hayes held in the property. By the trust deeds he had conveyed the legal title, and not having redeemed and procured a release, it still remained in the trustees; and when the prior liens of the trust deeds were discharged, and releases were executed, the legal title was restored to Hayes, and he thus acquired it from the trustees, and it inured to Smith under and by virtue of the covenants for title contained in Hayes' deeds to him. Inasmuch as Hayes had but the equity of redemption, Worthington's judgment became a lien on that, and nothing more, and that was all that was, or could be, sold under the execution, and the purchaser could acquire only Hayes' equity of redemption, and he never redeemed.

Bayard, by redeeming from the prior trust deeds, by paying and obtaining their release to secure a first lien on the premises, succeeded to all of the rights of lienholders under the trust deeds, and of these was the right to have the property sold in the same manner it could have been done under those trust deeds, and a sale under them, it is apparent to all, would have cut off and barred Hayes' equity of redemption, and all subsequent liens upon it. Hayes had given Smith full power to sell the premises to refund the money borrowed to discharge the prior trust deeds and judgments, and Smith exercised the power conferred for the purpose, and he thereby transferred the title to the purchaser. Appellant, as a judgment creditor, could have redeemed from these prior liens, and had he done so, that would have prevented Smith from selling to raise the money to pay Bayard the money advanced to release the property, and left Smith with no power to sell for anything but the amount loaned above that sum. No redemption was made, and Smith sold in pursuance of the power conferred by Hayes, and thus passed the title to the purchaser as effectually as had the sale been made by

the trustees named in the prior trust deeds, and appellant's lien was barred by that sale.

This court has, in several cases, had the question of subrogation before it. In the case of *Young* v. *Morgan*, 89 Ill. 200, where one purchased land of another, and as a part of the purchase money paid off and discharged a trust deed made by his grantor on the land, and to protect this land from sale, and to free his title from the incumbrance, it was held the payment was not voluntary, and he should be subrogated to the rights of the creditor under the trust deed, although it was formally released, and not assigned, so as to cut off an intermediate judgment lien against the land.

In the case of *Darst* v. *Gale*, 83 Ill. 136, it was said: "The claim made that the bonds were paid and the deed of trust thereby discharged, is not tenable. Neither Pulsifer & Co. nor the corporation ever treated the bonds as paid. On the contrary, they both treated them as unpaid, and as a standing security for future advances. The parties had the unquestionable right to treat the notes and deed of trust in this light, and having done so, it does not lie in the mouth of one in nowise prejudiced thereby, to complain." In that case the deed of trust and notes were in fact, although not in form, as fully satisfied as in this case; but the satisfaction in this case was for Bayard's protection and benefit, and not for the general release of the property, and in this as in that case, keeping the deed of trust alive did not injure appellant and those under whom he claims. Their rights were in nowise affected by keeping this lien alive in equity in favor of Bayard. The lien of that judgment remained the same on Hayes' equity of redemption as before.

It is said Bayard was not required to loan his money; but it may be answered that the purchaser, in the case of *Young* v. *Morgan*, *supra*, could have refrained from purchasing land subject to a trust deed. He was not required to purchase to protect any interest of his. So, in *Darst* v. *Gale*, *supra*, Pul-

sifer & Co. were not under any necessity of loaning further sums of money after the notes and deed of trust were satisfied, and yet they were protected.

In the case of *Worcester National Bank* v. *Cheeney*, 87 Ill. 602, where, in pursuance of an agreement, a member of a firm indebted to a bank took up the indebtedness of the firm by giving his own individual notes, with the agreement that the notes and trust deed then held by the bank as collateral security for the firm debt should remain as collateral security of such new notes, it was held that this did not extinguish the lien of the deed of trust. It is true, in that case there was an express agreement, while here, from the facts and circumstances, the law will imply such an agreement between Hayes and Bayard.

While it may not be strictly subrogation, the doctrine of this court is, that when required, in the promotion of justice, and to prevent wrong, a special or implied contract to keep a satisfied lien on foot to secure other and further advances or indebtedness will be enforced. In such cases the intention of the parties must, to a large extent, control; but, as in subrogation, such agreements will not be enforced against equal or superior equities. In this case the judgment in favor of Worthington was not of that character, but it was a junior lien to the deeds of trust and the other judgments, and to protect Bayard in the payment of these prior liens in nowise affects that lien. To do so but prevents appellant from obtaining an inequitable advantage, and promotes justice.

We have seen that Smith held the legal title, and sold and conveyed it to Mrs. Bayard. This sale was not made by virtue of Bayard having paid the judgments, but by virtue of the legal title having inured to Smith by the covenants in Hayes' trust deed to him on the release of the legal title held by the other trustees. The debts secured by the trust deeds and judgments still remained a lien in favor of Bayard. It is true that Smith, by discharging the judgments, acquired

by reason thereof no right to sell for their satisfaction, but being a lien on the property in Bayard's favor, and having power under Hayes' deeds to sell the land, when the sale was made by virtue of that power he had the right, and it was his duty, to pay the liens of the trust deeds and the judgments to Bayard's representative. This he virtually did by Mrs. Bayard purchasing the property. When Bayard acquired the benefit of these judgments, they were superior to the Worthington lien, and appellant, under any aspect of the case, to render his judgment effective, was bound to redeem. He that asks equity must do equity. This, appellant has failed to do, as he did not redeem, or offer to redeem, from the prior trust deeds and judgments. He has therefore failed to present a case entitling him to the relief sought. Even if Smith sold for more than was due as a lien on the premises under his trust deed, that would be ground for Hayes to set the sale aside, but not by a third person, unless the sale was in fraud of his rights. Hayes made no such objection, and appellant has shown no grounds for urging it.

The entire record considered, we perceive no grounds for reversing the decree of the court below, and it is affirmed.

*Decree affirmed.*