THE HOME SAVINGS BANK *et al.*

*v.*

MARY STEWART BIERSTADT.

*Opinion filed November 1, 1897.*

1. SUBROGATION—*one paying a debt at the debtor's request is not a volunteer.* A third person who pays a debt at the debtor's request does not occupy the position of a mere volunteer.

2. SAME—*distinction between legal and conventional subrogation.* Legal subrogation springs from the mere fact of payment of another's debt, as where the debt is paid to protect the payer's rights, or as surety, guarantor or insurer; conventional subrogation springs from express agreement with the debtor, by which one pays a secured debt with the promise of receiving a lien equal to that discharged by such payment.

3. SAME—*principle of conventional subrogation applied.* One who, at the debtor's request, pays off a first mortgage before due with the

promise of receiving a first lien for the money advanced, will be subrogated, in equity, upon failure of the lien given as agreed, to the rights of the first mortgagees, as against a second mortgagee whose security was taken with knowledge of the first mortgage lien.

4. SAME—*effect where first mortgage is released of record.* The principle of conventional subrogation will be applied, in equity, as against a second mortgagee, even though the first mortgage was released of record upon the execution of a new mortgage to secure money advanced by a third person to discharge the first mortgage, where the second mortgage was not taken nor the position of the second mortgagee changed because of the record showing the discharge of the prior lien.

*Home Savings Bank* v. *Bierstadt,* 68 Ill. App. 656, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

On the 30th day of June, 1892, William K. Lowrey was the owner of seven certain lots in a subdivision of land laid out by him at the north-east corner of Western and Park avenues, in Chicago, and on that date he executed to William J. Goudy, of the firm of Goudy, Shanklin & Co., trust deeds upon each of these lots to secure a gross sum of $22,450, with interest at six per cent, and with a provision that if default should be made in any installment of interest the entire sum might, at the option of the holder, become due and payable. Each of these seven trust deeds was recorded in the recorder's office of Cook county July 21, 1892, and then became a first lien upon the lots mentioned. On August 10, 1892, Lowrey executed a trust deed to one C. K. G. Billings, conveying lots 1, 2 and 3, referred to, to secure a note for $5250, payable to the Home Savings Bank of Chicago one year after date. This trust deed, dated July 1, was not delivered until on August 19, 1892, and on the following day was filed for record in the recorder's office.

On October 22, 1892, the firm of Goudy, Shanklin & Co. became dissatisfied with the Lowrey loans which they

held, and desired him to take them up by procuring a new loan. A written agreement was entered into, which recited that Lowrey was indebted to them in the sum of $25,300, of which $25,000 was secured by the trust deeds mentioned, and that an attachment was levied against the seven lots for the small amount, reciting further that Lowrey should apply to Horace A. Hurlbut for a first mortgage loan of $25,000 for the seven lots mentioned. To induce the same, Goudy, Shanklin & Co. agreed to pay the commission Hurlbut should charge, together with expenses of examination of abstract. The loan was requested by Lowrey, and the money was paid Goudy, Shanklin & Co. at Lowrey's request. It was also agreed that Goudy, Shanklin & Co. should join with Lowrey in a bond to remove the small attachment lien upon the property.

Hurlbut made the loan and received from Lowrey an abstract of title brought down to include the 28th of October, 1892, being the date his trust deed was recorded. This abstract did not show the deed of trust from Lowrey to Billings, which was given to secure the note of the appellant bank. Upon the showing of this abstract, Hurlbut, who was acting for and negotiating the loan for appellee, Mary Stewart Bierstadt, paid to Goudy, Shanklin & Co. $25,000, whereupon the trust deeds held by them were released. Appellee had no notice of the deed of trust from Lowrey to Billings until in June, 1895, when she filed her bill to foreclose the trust deed given to Hurlbut for her benefit. Her bill charged the loan was made and obtained for the purpose of paying off the seven trust deeds heretofore mentioned, and further charged that at the time of the execution and recording of the trust deed made by Lowrey to Billings to secure the note of the Home Savings Bank, both Billings and the bank knew of the trust deeds to Goudy upon the lots conveyed to Billings, and took their deeds of trust subject to that of Goudy. The bill set forth the payment by her, through Hurlbut, of the Goudy trust deeds without any notice on

her part of the existence of the Billings trust deed, and that her loan was made to Lowrey with the full belief that it was a first lien and for the sole and single purpose of discharging the Goudy trust deeds. She asks in her bill that her trust deed should be declared to be a first lien, and in equity she be declared entitled to be subrogated to the rights and lien of Goudy, Shanklin & Co.

To that part of appellee's bill in which she alleges the knowledge of Billings and the bank of the existence of the Goudy deeds, and the making of the loan for the purpose of satisfying those notes and deeds of trust at the request of Lowrey, appellants filed their demurrer. The demurrer was overruled and appellants elected to stand by it, whereupon the parts of the bill demurred to were taken as confessed. The case was referred to a master, who found the allegations of the bill true, and reported that appellee was entitled to a first lien upon these lots prior to the Billings trust deed. The amount due appellee was found by the master and a decree entered accordingly, which, on appeal to the Appellate Court, was affirmed, and this appeal is prosecuted.

WINSTON & MEAGHER, (JAMES F. MEAGHER, and SILAS H. STRAWN, of counsel,) for appellants:

It is only in cases where a person advancing money to pay the debt of a third person stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor as a matter of course, without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished. *Martin* v. *Martin*, 164 Ill. 640; *Insurance Co.* v. *Middleport*, 124 U. S. 549; *Hough* v. *Insurance Co.* 57 Ill. 320; *Beaver* v. *Slanker*, 94 id. 183; *Bishop* v. *O'Conner*, 69 id. 431; *Pearce* v. *Coal Co.* 121 id. 597; *White*

v. *Cannon,* 125 id. 416; *Suppiger* v. *Garrells,* 20 Ill. App. 629; *Kitchell* v. *Mudgett,* 37 Mich. 85; *Holt* v. *Baker,* 58 N. H. 277; *Watson* v. *Wilcox,* 39 Wis. 650; *Banta* v. *Garmo,* 1 Sandf. Ch. 384; 1 Jones on Mortgages, sec. 877; 24 Am. & Eng. Ency. of Law, 281; *Lloyd* v. *Galbraith,* 32 Pa. St. 103.

The appellee was bound to notice that the trust deed to appellant Billings was recorded, notwithstanding the abstract did not show the same. *Hall* v. *Shannon,* 85 Ill. 475; Starr & Curtis' Stat. chap. 30, sec. 31; *Steele* v. *Boone,* 75 Ill. 458; *Martin* v. *Martin,* 164 id. 640; *Alvis* v. *Morrison,* 63 id. 183; *Mather* v. *Jenswold,* 72 Iowa, 550.

A stranger or volunteer cannot, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor. *Hough* v. *Insurance Co.* 57 Ill. 318; *Young* v. *Morgan,* 89 id. 203; *Beaver* v. *Slanker,* 94 id. 175.

JAMES E. MUNROE, for appellee:

Where the payment is made by a stranger to a debtor in the expectation of being substituted in the place of the creditor, as by taking a new lien in the place of the old, then the person paying is entitled to subrogation. Subrogation, in such a case, is conventional subrogation, as distinguished from legal subrogation. *Coe* v. *Railway Co.* 31 N. J. Eq. 105; *Tradesmen's Ass.* v. *Thompson,* 32 id. 133; *Seeley* v. *Bacon,* 34 Atl. Rep. 139; *Tyrrell* v. *Ward,* 102 Ill. 29; 24 Am. & Eng. Ency. of Law, 292.

A person who discharges a lien upon land at the request of the debtor and with the consent of the creditor is not a volunteer, an intermeddler or a stranger. A person thus paying pays by right and with leave of all parties concerned. Where a security given to such a payer, under an agreement to give him a first lien, fails for any reason, the payer is entitled to be subrogated to the lien which he has discharged. *Spaulding* v. *Harvey,* 129 Ind. 106; *Thompson* v. *Insurance Co.* 139 id. 325; *Sidener* v. *Pavey,* 77 id. 241; *Edwards* v. *Davenport,* 20 Fed. Rep. 756; *Bank* v.

*Epstein,* 44 id. 403; *Milholland* v. *Tiffany,* 64 Md. 465; *Robertson* v. *Mowell,* 66 id. 538; *Moore* v. *Lindsey,* 52 Mo. App. 480.

Subrogation proceeds upon the theory of payment and satisfaction, and results in reviving the lien for the benefit of the party discharging the same. Equity treats an incumbrance which has been discharged by mistake of fact not induced by gross negligence, as alive for the benefit of the party discharging the same, where the principles of justice require it,—and this, too, as against a junior incumbrancer who has not taken his incumbrance or changed his position because of the discharge of the senior incumbrance. *Tyrrell* v. *Ward,* 102 Ill. 29; *Emmert* v. *Thompson,* 49 Minn. 386; *Hammond* v. *Barker,* 61 N. H. 53; *Mortgage Co.* v. *Peters,* 72 Miss. 1058; *Draper* v. *Ashley,* 104 Mich. 527; *Levy* v. *Martin,* 48 Wis. 198; *Tradesmen's Ass.* v. *Thompson,* 32 N. J. Eq. 133; *Bruse* v. *Nelson,* 35 Iowa, 157; *Campbell* v. *Trotter,* 100 Ill. 281.

The cancellation of a mortgage on the record is only *prima facie* evidence of its discharge, and leaves it open to the party making or consenting to such cancellation to prove that it was made by accident, mistake or fraud. *Trenton* v. *Woodruff,* 2 N. J. Eq. 117; *Robinson* v. *Sampson,* 23 Me. 388.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

Subrogation, as a principle of equity jurisprudence, is generally confined to the relation of principal and surety and guarantors, or to a case where a person is compelled to remove a superior title to that held by him in order to protect his own, and also to cases of insurers. The general principle of subrogation is confined and limited to these classes of cases. (*Bishop* v. *O'Conner,* 69 Ill. 431; *Borders* v. *Hodges,* 154 id. 498.) Whilst these general heads include the doctrine and principles of subrogation, that doctrine has been steadily expanding and growing in importance and extent in its application to various sub-

jects and classes of persons. This equitable principle is enforced solely for the accomplishment of substantial justice, where one has an equity to invoke which cannot injure an innocent person. The right of subrogation which springs from the mere fact of the payment of a debt, and which is included under the heads first above stated, is what is termed legal subrogation, and exists only where included within those classes. But in addition to this principle of legal subrogation there exists another principle, which is termed conventional subrogation, which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied with the expectation of receiving an equal lien. *Coe* v. *Maryland Railway Co.* 31 N. J. Eq. 105; *Tyrrell* v. *Ward*, 102 Ill. 29; *Tradesmen's Ass.* v. *Thompson,* 32 N. J. Eq. 133.

This principle has been before this court, and the necessity and effect of such an agreement were considered in *White* v. *Cannon*, 125 Ill. 412, where it was said (p. 415): "It is only where the payment of incumbrances is necessary to protect rights of the payer, or where they are paid pursuant to an agreement with the debtor that the payer shall hold them as security for the money advanced, that the payer will be subrogated to the rights of the holders of such liens and the liens will be kept alive for his benefit. Where the demand of a creditor is paid with the money of a third person not himself a creditor, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, the demand is absolutely extinguished."

It is the agreement that the security shall be kept alive for the benefit of the person making the payment which gives the right of subrogation, because it takes away the character of a mere volunteer. Here the agree-

ment between the debtor and the appellee, who advanced the money, was to the effect that appellee was to advance sufficient money to discharge the seven Goudy deeds of trust, and should receive from the debtor, by way of security for the money so advanced, a first mortgage upon the seven lots. In equity that was an agreement that the Goudy deeds of trust should become security for her loan. That was the substance of the transaction, and equity will effectuate the real intention of the parties, where no injury is done to an innocent party, by applying the principle of conventional subrogation. *Draper* v. *Ashley,* 104 Mich. 527; *Tyrrell* v. *Ward, supra; Union Mortgage Co.* v. *Peters,* 72 Miss. 1058; *Levy* v. *Martin,* 48 Wis. 198; *Wilton* v. *Mayberry,* 75 id. 191; *Dillon* v. *Kaufman,* 58 Tex. 696.

This principle will be applied even where the record shows a release of the satisfied incumbrance, as the lien so satisfied will be removed for the benefit of the party satisfying the same, where there has not been gross negligence and where justice requires it should be done,— and this will be ·done as against a subsequent incumbrancer whose incumbrance has not been taken or his position changed because of the record showing the discharge of the senior incumbrance. *Tyrrell* v. *Ward, supra; Hammon* v. *Barker,* 61 N. H. 53; *Campbell* v. *Trotter,* 100 Ill. 281; *Emmert* v. *Thompson,* 49 Minn. 386; *Union Mortgage Co.* v. *Peters, supra; Bruse* v. *Nelson,* 35 Iowa, 157; *Draper* v. *Ashley, supra; Levy* v. *Martin, supra.*

The Goudy deed of trust was in existence and recorded when the Billings deed of trust was made and recorded, as was the latter when appellee's deed was made and recorded. So far as shown by this evidence there was only constructive notice to Billings of the Goudy deed and to appellee of the Billings deed. And as said in *Campbell* v. *Trotter, supra,* (on p. 284): "Campbell took his mortgage with knowledge of Trotter's first mortgage of March 19, 1869, and as a second mortgage subordinate to Trotter's, and it should be held subordinate to that mort-

168—40

gage. There has nothing occurred since, which, in equity, should displace priority. The taking the new mortgage of August 30, 1877, and entering satisfaction of the first mortgage, was, as designed by the parties, but in continuation of the lien of the first mortgage. * * * The transaction was entirely irrespective of Campbell. * * * It was with no reference to his benefit, and should not be made to redound thereto by the advancement of his mortgage to a priority over the lien of Trotter. * * * It was through ignorance, in fact, of the existence of Campbell's mortgage that Trotter entered satisfaction of the first mortgage and surrendered the notes, and which he would not have done had he known of Campbell's mortgage. This Trotter testifies to, and the nature of the transaction itself would satisfy one that such must have been the case."

The failure of appellee or her agent to learn of Billings' trust deed was not negligence which would bar her right to relief, when the only notice is constructive, and not actual. *Tyrrell* v. *Ward, supra; Young* v. *Morgan,* 89 Ill. 199; *Smith* v. *Dinsmoor,* 119 id. 656; *Campbell* v. *Trotter, supra.*

The contention urged by appellants that the payment made by appellee was that of a mere volunteer, cannot be sustained. Where a payment is made at the request of the debtor, the person so paying is never a volunteer; and in this case, the payment having been made at the request of the debtor, appellee was not a volunteer, merely. *Emmert* v. *Thompson,* 49 Minn. 386; *London Co.* v. *Tracy,* 58 id. 201; *Carr* v. *Caldwell,* 10 Cal. 380; 24 Am. & Eng. Ency. of Law, 290.

The judgment of the Appellate Court for the First District is affirmed.          *Judgment affirmed.*