Williams, J.
The questions arising in the settlement of the controversy between these parties» are: (1.) Is the mortgage madeby the Woodworths to Ludlow, and by him assigned to Hughes, valid as against the subsequent liens of the Amicks? And if not: (2.) Is Hughes entitled for his protection to enforce the prior liens which were on the property when he obtained his mortgage, and to the payment of which the money loaned by him was applied under agreement with the Woodworths ?
*99 1. The execution, by Mrs. Woodworth, of the mortgage made to Ludlow, was attested by the latter, and by but one other witness ; and her acknowledgment of its execution was also taken and certified by the mortgagee, acting as a notary public. The mortgage so attested and acknowledged was recorded before the Amicks acquired any of their liens on the property. It is contended in behalf of Hughes, that there being nothing on the face of the Ludlow mortgage, other than the identity of name, to indicate that the mortgag’ee was the same person who witnessed its execution, and, as an officer, certified the acknowledgment, it was properly admitted to record, and appeared thereon to have been executed, attested and acknowledged in due form of law when the Amicks obtained their liens, and consequently, is superior to them. Under our statute mortgages of real property executed agreeably to its provisions are entitled to record, and take effect as against subsequent liens from the time they are delivered to the recorder of the proper county for that purpose. Revised Statutes, section 4133. And it is essential to the proper execution of such instruments that they be signed by the mortgagor in the presence of two witnesses who shall attest the signing and subscribe their names to the attestation, and that such signing shall also be acknowledged by the mortgagor before an officer having authority to take the acknowledgment, who is required to certify the same and subscribe his name thereto.
The statute does not in express terms forbid a grantee in an instrument for the conveyance or incumbrance of real property to take and certify the g'rantor’s acknowledgment, nor disqualify him as a witness to its execution, nor declare an in *100 strument so attested and acknowledged to be void. Nor, does the effect of such attestation or acknowledgment on the validity of the instrument appear to have been considered in any reported decision of this court. It is generally held, however, in other states, under statutes similar to ours, that deeds and mortgages so attested and acknowledged are not entitled to record; and, if recorded, are inoperative as constructive notice to persons who subsequently acquire an interest in or lien on the property. The reason given in some of the cases is, that taking an acknowledgment of such an instrument is a judicial, or quasi judicial act, and comes within the rule that one cannot be a judge in his own case. This reason would not apply to the attestation by the grantee. The true reason of the disqualification we apprehend is, that to permit a grantee to attest as a witness the execution of an instrument made to himself, or take its acknowledgment as an officer, where its attestation and acknowledgment are necessary to give it validity, would be against public policy, and practically defeat the real purpose of the law, which is to prevent the perpetration of frauds on the grantors, and afford reasonable assurance to those who deal with or on the faith of such instruments that they are genuine and represent bona fide transactions.
In this particular instance Mr. Ludlow appears to have acted in good faith, and under an honest belief that his acts would be legal because he was but the nominal mortgagee, having no substantial interest, or but a very small one in the mortgage, the real party beneficially interested being Mr. Hughes. The mortgage is nevertheless invalid. The rule of disqualification must be of general *101 application, and not made to depend upon the result of inquiry into the motives of the parties; for such a modification of the rule would necessarily open the door to the mischiefs it was designed to prevent. It is probably unnecessary to notice that this question was not involved in Johnson v. Turner, 7 Ohio, 216, and that case is unaffected.
2. The second execution and acknowledgment by Mrs. Woodworth of the Ludlow mortgage, and its record in that form, were subsequent to the record of the Amicks mortgage and the recovery of their judgments. This, it is claimed, gives them priority of right to the fund in controversy. On the other hand, it is contended in behalf of Hughes that the mortgage to the Amicks is, in effect, made subject to his ; or if not, then, though his mortgage is subordinate to the Amick liens, he is nevertheless entitled to the fund by subrogation to the rights of the prior incumbrancers, to the payment of whose liens the money loaned by him to the Woodworths was applied in pursuance of an agreement with them that his mortgage should be the first lien on the premises.
As the first of these contentions relates only to the conflict between the mortgages, its consideration will become unnecessary if the last is sustained;'for that will dispose of the whole fund. It appears from the record that when Hughes, through Ludlow, made the loan to the Woodworths, to secure which they gave to Ludlow the mortgage in question, there were subsisting incumbrances on the premises to the amount of $9,861; that to procure the loan the Woodworths agreed the mortgage should be the first lien on the property, and in order to make it so, that the money loaned should be applied, as far as was necessary, to the *102 payment of the prior incumbrances ; and, that in pursuance of this agreement the money was so applied and the mortgage executed; the parties believing- and intending it to be the first lien. It failed to become such only through its defective attestation and acknowledgment; and in consequence, the Amicks’ liens, at law, obtained priority over it. Under these circumstances neither Ludlow nor Hughes can be regarded as a mere volunteer in paying off the prior liens, or in the application of the money loaned to their payment. It is a well settled general rule that one who having an interest in or lien on property pays off, for his protection, a prior incumbrance on the property, is entitled in equity to be subrogated to all the rights of the prior incumbrancer, and enforce the security to indemnify himself for such payment out of the incumbered estate. The rule is applicable where a loan of money is obtained by the owner of the property under an agreement that it is to be secured by a mortgage that shall be the first lien, and the money is applied, in whole or in part, to the payment of an existing incumbrance to enable him to furnish the promised security. If, in such case the mortgage prove defective, the mortgagee has such an interest as will entitle him to call to his aid the doctrine of subrogation. This doctrine says Pomeroy, in his work on Equity Jurisprudence, section 1212, “is justly extended to one who, having no previous interest, and being under no obligation pays off a mortgage, or advances money for its payment, at the instance of the debtor party and for his benefit. Such a person is in no true sense a mere stranger and volunteer.” In a note to that section, where the authorities are collected, it is said: “The *103 doctrine is also extended to a person who had no subsequent interest in the premises, and was therefore under no obligation or personal necessity of paying the debt, but who at the instance of the debtor pays off the mortgage for his benefit, or advances the money for its payment, under an agreement that he shall have security for his payment or advances. ’ ’ To the authorities there cited, the following may be added in support of the rule as above stated. Bank v. Bierstadt, 168 Ill., 618; 48 N. E. Rep., 161; George v. Butler, 50 Pac. Rep., 1032. If Ludlow had first taken the mortgage under his agreement with the Woodworths, and then, out of the money loaned paid the previous incumbrances in order to secure the first lien, and thus protect himself against them, there could be no doubt, we think, under the authorities, that he would have had such interest in the premises as would enable him to invoke the remedy of subrogation ; and the fact that they were paid before, or contemporaneously with the execution of his mortgage, does not change, in substance, his relation to the premises, or the parties. See Young v. Morgan, 89 Ill., 200; Patterson v. Burdrall, 64 N.Y., 295, 299; Building Associations v. Thompson, 32 N. J. Eq., 133.
But the remedy is never allowed against an intervening bona fide purchaser without notice of the equity, nor one who occupies a like position* And that protection is claimed here for the Amicks. The trial court found, however, that when they obtained their mortgage, and recovered their judgments against Mrs. Woodworth, they had notice, not only of the actual application of the money loaned by Hughes to the payment of the incumbrances then on the property, but also of the *104 agreement between the Woodworths and Ludlow for their payment out of thé money loaned in order that the mortgage for its security should be the first lien on the premises. That was sufficient notice of Hughes’ complete equitable right of subrogation. But it is insisted that the finding is without evidence to sustain it. An examination of the evidence has satisfied us that while there appears to have been no testimony of direct communication of the facts as found to the Amicks, there were circumstances tending to prove their knowledge of them. Notice may be satisfactorily established by inference from circumstances proven, and not infrequently that is the only character of proof attainable. And though we should differ with the trial court with respect to the probative force of the evidence on this point, the fact that different conclusions may be drawn from it by different persons only serves to show that a consideration of its weight is involved in an inquiry into the finding. In view of this finding it is unimportant that the incumbrances paid out of the money loaned by Hughes were discharged or cancelled on the record, and so appeared when the Amicks acquired their liens. Hughes became in equity the assignee of the incumbrances, and entitled to keep them alive for his reimbursement as against a subsequent incumbrancer with notice of his equity. This equitable result follows, although no actual assignment, written or verbal, accompanies the payment, and'the securities themselves were not delivered over to the person making the payment, and even though the debt be receipted as having been fully paid, and the incumbrance so paid was *105 actually discharged and cancelled of record. Pomeroy’s Eq., sec. 1212.
The rule established by the current of authority is, that when a prior incumbrance is discharged of record, the release not showing- by whom it was paid, a purchaser or subsequent incumbrancer who has no other notice than that afforded by the record may, with safety, assume that the payment was made by the debtor; and he is not put on inquiry to ascertain whether it was paid by a third person under circumstances entitling the latter to subrogation. But when the purchaser or subsequent incumbrancer has notice that the payment was made by one having a lien on, or interest in the property, or under other circumstances which give him a right in equity to subrogation, that right will not be defeated nor affected by the fact that the incumbrance paid by him thereafter appears of record to have been cancelled. He will, notwithstanding, as against such subsequent pur-' chaser or incumbrancer, be entitled as the equitable assignee of the previous incumbrance so paid by him to enforce the same for his reimbursement. Ahren v. Foreman, 46 Minn., 156; Richards v. Griffith, 116 Ill., 216; Tyrall v. Ward, 102 Ill., 29; Robinson v. Lewitt, 7 N. H., 73, 99-100; Persons v. Shaeffer, 65 Cal., 79; Patterson v. Burdrall, 64 N. Y., 295-299; Bank v. Bierstadt, supra.
Nor does the enforcement of the remedy in behalf of Hughes in this case conflict with our recording statute which gives effect to mortgages from the time they are filed for record. His right of subrogation does not grow out of, nor depend upon the mortgage made to Ludlow. In administering the remedy, no effect is given to it. *106 On account of its defective execution it remains invalid and subordinate to the Amick liens. His equity arises entirely from the payment of the prior incumbrances. The defect in the Ludlow mortgage simply created the necessity for resort to the remedy of subrogation in order that he should have reimbursement for the payments so made. He might at the time of payment have taken an assigmment of the incumbrances, and in that event his rig’ht to enforce them as liens superior to those of the Amicks could not be questioned. Equity dispenses with the formality of an assignment in such cases, and treats the securities as assigned to him for his protection, because it is manifestly just that he should have the benefit of them. It would be far from just that the Amicks should have the advantage of the payments made by Hughes, and thus in effect appropriate his money through the mere mistake or inadvertence of the parties resulting in the invalidity of the mortgage by which they intended that he should, and believed he would acquire the first lien on the premises. It seems clear, therefore, that upon the facts found by the circuit court, the right of Hughes to the fund in controversy is superior to the claims asserted by the Amicks against it, and there was no error in awarding it to him. This conclusion renders it unnecessary to consider the question whether the mortgage made to the Amicks was, by reason of the exception in the covenants, and the agreement under which it was made, subject to the Ludlow mortgage.
The objection made to the action of the court in granting Hughes leave to amend his pleadings to conform to the facts proved, and then proceeding *107 to render judgment, is without force. The power to allow such amendments is expressly conferred by the code; and when Hughes filed his amendment the Amicks immediately replied, and no continuance, or opportunity to offer further evidence, was requested by them.

Judgment affirmed.