34　295|
s184s505|

# John S. Davis' Sons v. Albert Fuller and John Lantz, Use of, etc.

1. REMEDIES—*At Law and In Chancery.*—Where an action at law affords ample remedy for enforcing a liability, unless some special and substantial ground of equity jurisdiction affects the adequacy of the remedy at law, courts of equity will remit the parties to the courts of law.

2. SUBROGATION—*As Between Debtor and Creditor.*—As between the debtor himself and the creditor, where the latter has a formal obligation of the debtor, and also a security on a fund to which he may resort for payment, unless some other equity intervenes, a court of equity ought not to compel the creditor to resort to such a fund before he asserts his claim by a personal suit against his debtor.

3. SAME—*Limits of the Doctrine.*—The doctrine of subrogation is confined to the relation of principal and surety, and guarantors.

4. SAME—*Application of the Law.*—As between principal and surety, or principal and guarantor, the doctrine is applied to prevent a multiplicity of suits; and where a person, to protect his own junior lien, is compelled to remove one which is superior, the person so discharging the superior lien is treated as its purchaser or assignee, unless the facts show that it was intended as an absolute payment.

**Bill to Set Aside a Sale of Machinery** under a chattel mortgage. Trial in the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge, presiding. Decree for complainant; appeal by defendant. Heard in this court at the May term, 1899. Reversed and remanded, with directions. Opinion filed September 20, 1899.

BARR & POLLOCK, attorneys for appellant.

PEIRCE & PEIRCE, attorneys for appellees.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

A bill in chancery was filed by appellees against appellant to set aside a sale of threshing machinery under a chattel mortgage from appellee and others to appellant; to secure an accounting to appellee for moneys received by appellant upon a subsequent sale of such machinery to Reed and Zimmerman; and for the subrogation of appellee to the rights of appellant in the proceeds of the sale to Reed and Zimmerman, and for general relief. The master reported his conclusion that $1,136.49 was due appellee from appellant; and upon a final hearing a decree was entered by the court in favor of Albert Fuller and John Lantz, for the use of Albert Fuller, for the payment of that amount by appellant. From that decree appellant has appealed to this court and urges a reversal, because appellee's relief is adequate at common law; because John Lantz is not joined as a beneficial party to the suit, and because the amount found by the decree is excessive, together with various other reasons.

The facts developed by the evidence are that on July 20, 1895, Fuller, Lantz & Crawford, as a partnership, bought for $1,640 of appellant a threshing machine outfit, including a weigher; and agreed to pay $600 November 1, 1895; $440 November 1, 1896; $400 November 1, 1897; and $200 November 1, 1898; giving their notes accordingly, bearing interest at eight per centum, payable January 1 each year thereafter, securing the same by chattel mortgage on the outfit and other property of Fuller, together with mortgages on real estate of Lantz and of Crawford, in Missouri. Crawford was afterward released from the contract on payment of $90, which was credited on the first note, and his name erased from the instruments by general consent. Lantz paid $76 on the first note, and Fuller paid the balance of that note and $59.61 on the second.

September 25, 1896, having obtained the consent of appellant, appellee sold the outfit, except the weigher, to C. W. Reed and A. C. Zimmerman for $1,250, who agreed to pay $600 thereof to appellant—$400 September 25, 1897, and $200 September 25, 1898—giving their notes accordingly, bearing interest at eight per centum with Jack Zimmerman and Crafton Zimmerman as security; which notes were executed and accepted as collateral security for the original notes of Lantz, Fuller & Crawford to appellant, and were further secured by chattel mortgage on property of Reed and Zimmerman, who further agreed to pay $650 of the purchase price to Fuller and Lantz, giving five notes therefor, bearing eight per cent interest and secured by chattel mortgage upon the machinery in question.

Some months afterward appellant recovered judgment against appellee and others, in McLean County Circuit Court, on the balance of the $440 and $200 notes, and upon sheriff's sale under execution took certificate of purchase to a tract of Fuller's real estate, bidding the full amount of debt, interest and costs. In July, 1897, at Adair county, Missouri, appellant foreclosed the original chattel mortgage of Lantz and Fuller on all the outfit except the weigher, upon default in payment of the original Lantz and Fuller $200 note and interest, and bought in the machinery, afterward selling it again to Reed and Zimmerman, returning to them the $400 and $200 notes given as collateral security for the Lantz and Fuller debt. Appellee was present at this foreclosure sale and made no objection to the proceeding, although he offered to take up the note if the parties would wait till he could get the money.

If the contention that appellant received moneys for the use of appellee, or which he was bound by law to pay over to appellee, be true, an action at law affords ample remedy for enforcing the liability; unless some special and substantial ground of equity jurisdiction affects the adequacy of the remedy at law, in the absence of which courts of equity will remit the parties to the courts of law. The mere fact that an accounting is asked for or is necessary is

insufficient to give a court of equity jurisdiction. County of Cook v. Davis, 143 Ill. 151.

The reason assigned by appellee then, as a basis for the equitable relief prayed for, is that appellee, upon the extinguishment of the chattel mortgage given by him, was entitled to be subrogated to the rights of appellant flowing from the sale of the machinery to Reed and Zimmerman; and, as a corollary of that proposition, insists that appellant must resort to the notes of Reed and Zimmerman, admitted to be collateral security only, to satisfy the lien of the first chattel mortgage and to discharge the debt of appellee, whereupon, by virtue of the doctrine of subrogation, the remainder of those notes would become due to appellee. As regards the latter contention it is said in 1 Story's Equity Jurisprudence, 640:

"But as between the debtor himself and the creditor, where the latter has a formal obligation of the debtor, and also a security on a fund to which he may resort for payment, there seems to be no ground to say (at least, unless some other equity intervenes) that a court of equity ought to compel the creditor to resort to such a fund before he asserts his claim by a personal suit against his debtor. Why, in such a case, should a court of equity interfere to stop the election of the creditor as to any of the remedies which he possesses in virtue of, or under, his contract? There is nothing in natural or conventional justice which requires it. * * * And, at all events, the settled doctrine now seems to be, in conformity to the early as well as the latest decisions, that the debtor himself has no right to insist that the creditor, in such a case, should pretermit any of his remedies, or select between them, unless some peculiar equity springs up from the circumstances."

Thus it appears that appellant had a right to foreclose the first mortgage, notwithstanding the collateral notes held to secure the same debt, providing the same was a legal lien, which, if it was not, as is alleged, would clearly relegate appellee to an absolute remedy at law.

The claim to subrogation is further affected by the character of the sale of September 25, 1896, to Reed and Zimmerman. At that time appellee owned the machinery, and had its possession and control, and it must be clear

that it was appellee who sold and delivered it to Reed and Zimmerman, who thereupon agreed to pay $1,250 for it; $600 of the consideration to be represented in collateral notes in the hands of appellant and the balance, $650, to be paid to Lantz and Fuller, at all events, and, so far as that remainder is concerned, appellant was, and still is, a stranger to the obligation and to its security. If appellee had promptly met the debt to appellant, can it be said the result would be a right of subrogation to appellee? We do not believe the answer can be affirmative. For appellant would on that contingency have no rights that appellee did not have; and therefore substitution could avail nothing. Then upon what principle can appellee claim that right under the facts of this case? In the case of Bishop v. O'Connor, 69 Ill., at page 437, it is said:

"That doctrine is confined to the relation of principal and surety, and guarantors, or to cases where a person, to protect his own junior lien, is compelled to remove one which is superior, and in cases of insurers paying losses. In the first class of these cases the doctrine is applied to prevent a multiplicity of suits. And in the second class of cases the person discharging the superior lien is treated as its purchaser or assignee, unless the facts show it was intended as an absolute payment."

And, further, in the case of Home Savings Bank v. Bierstadt, 168 Ill. 618, where it was said (page 624):

"The right of subrogation, which springs from the mere fact of the payment of a debt, and which is included under the heads first above stated, is what is termed legal subrogation, and exists only where included within these classes. But in addition to this principle of legal subrogation there exists another principle, which is termed conventional subrogation, which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied with the expectation of receiving an equal lien—citing cases."

Tested by these rules it in apparent that appellee does not occupy that relation to appellant from which it is

shown the doctrine of subrogation springs; but it simply shows that the true relation existing between them is that of debtor and creditor alone, not that of principal and surety, or guarantor, nor of a third party holding a junior lien and satisfying the superior one to protect it; and, as to the other or conventional subrogation, it is sufficient to say that he himself was the debtor who was bound to satisfy the claim that was extinguished. Therefore it seems that the adequacy of the remedy at law remains unaffected by any such consideration to give a court of equity the jurisdiction sought.

Holding these views of the case, consideration of the other alleged errors will not be necessary, and accordingly the decree of the Circuit Court will be reversed and the cause remanded, with directions to dismiss the bill for want equity.   Reversed and remanded.