|33|63|
|80|12|

## NEAL VS. SPEIGLE, ADM'R.

1. VENDOR'S LIEN: *Waived by taking mortgage.*
   Where a vendor of land takes a mortgage upon it, to secure the purchase money, he thereby waives his equitable lien.

2. VENDOR AND VENDEE: *Rescission, cancellation of deed, etc.*

A sold and conveyed land to B, taking from him a mortgage on the land for payment of the purchase money, and stipulating that if the purchase money was not promptly paid at maturity, B should reconvey the land to A, and A should deliver to him his note for the unpaid purchase money. After the purchase note matured, B being unable to pay, they agreed to rescind as agreed in the mortgage, by destroying the deed, mortgage and note, and to meet afterward and burn them. A died soon afterward and before the papers were destroyed. His administrator knowing of the agreement to rescind, afterward united with B in burning the deed, note and mortgage, B at the time concealing from him the fact that he had a few days before caused the deed to be recorded. B subsequently sold the land to D, who was cognizant of all these facts, for about one-third its value. Held: *First*, that the destruction of the papers did not destroy or divest the title conveyed by them. *Second*—That actual notice of the unrecorded mortgage did not defeat the title of the subsequent purchaser. *Third*—But that the agreement of B to rescind precluded A from having the mortgage recorded, and equity would enforce the agreement to rescind, against him or his vendee who purchased with notice of the facts.

APPEAL from *Sebastian* Circuit Court, G. D. in Chancery.
Hon. W. W. MANSFIELD, Circuit Judge.
*J. H. Rogers*, for appellant.

ENGLISH, CH. J. :

The material allegations of the bill in this case are :

That on the 20th October, 1871, Joseph E. Jones sold and conveyed to W. D. Shaver the southeast quarter of the southeast quarter of Section 32, Township 7 north, Range 29 west, for the consideration of $500, and Shaver conveyed to him Lot No. 1, Section 6, Township 6 north, Range 29 west, forty-seven acres, in payment of $200 of the purchase money, and for the remaining $300 gave him a note payable 25th December, 1872, bearing 10 per cent. interest. To secure the payment of the note, Shaver executed to Jones a mortgage back on the tract sold and conveyed by Jones to him, which contained a provision that if Shaver should fail or be unable to meet said note promptly at maturity, then and in that event the trade was to be cancelled, so far as that Shaver should reconvey to

Jones the land, and Jones should deliver up to him the note; but for the use, occupation and profits of the land, Jones was to retain the tract conveyed by Shaver to him.

That in the month of January, 1873, after the maturity of the note, Jones was taken seriously ill at the house of L. J. Speigle, and during his illness Shaver went to see him, and expressing to him his inability to pay the note, proposed to him to rescind the trade according to the requirements of the mortgage, which was then and there agreed upon by the parties. But as Shaver did not have with him the deed to the land executed to him by Jones, it was definitely agreed between them that at some future day, not far distant, they would meet and rescind said sale according to the terms of the mortgage; and it was further agreed between them that as the deed and mortgage had not been admitted to record, a destruction of them and the note would fully carry out the requirements of the mortgage for the recision of the sale; and Jones expressed to Speigle his wish that this agreement with Shaver should be fully carried out, and the sale of the land rescinded according the terms of the mortgage.

That Jones did not recover from his illness, but died about the 30th of January, 1873, and Speigle was appointed his administrator by the Probate Court of Sebastian County, Greenwood District, where the parties resided and the land was situated.

That on the 5th of February, 1873, a few days after the death of Jones, and after the grant of letters of administration upon his estate to Speigle, Shaver, with intent to cheat and defraud the creditors and heirs of Jones, filed and caused to be recorded in the Recorder's office at Greenwood, the deed executed by Jones to him for said tract of land.

4

That a few days after the recording of the deed, Shaver came to the house of Speigle and stated the agreement between him and Jones to rescind the contract of sale by the destruction of the deed, mortgage and note, and as the circumstances and agreement were well known to Speigle, and believing it to be right, he consented to carry out said agreement, and upon his part consigned to the flames the mortgage and note, and Shaver on his part burned the deed, Speigle not knowing at the time time that the deed had been recorded.

That John Neal, the brother-in-law of Shaver, and who was his adviser in this fraudulent act, claimed to be the owner of the land by purchase and conveyance from Shaver, and that he purchased with full notice of the above facts and circumstances, and was not an innocent purchaser.

The bill was filed by Speigle as administrator of Jones, against Shaver and Neal, in the Circuit Court of Sebastian County, Greenwood District, and after making, in substance, the above allegations, prayed a forclosure of the mortgage, if the court could not decree a rescission of the sale agreed upon, and cancellation of the fraudulent registration, deed, etc.

Shaver did not answer the bill, and a decree, by default, was entered against him.

Neal, in his answer, states that he purchased the land on the 11th of March, 1873, of Shaver, who was then in possession of it, for $200, and that by deed of that date, Shaver conveyed the land to him.

He denies that he was the adviser of Shaver in the fraudulent matters alleged in the bill, and claims to be an innocent purchaser, etc.

The depositions read upon the hearing are not copied in the transcript, but a bill of exceptions taken by Neal sets out what was proven by the parties. It appears from it that the plaintiff proved all and singular the allegations of the bill, except the

allegation that Neal was the adviser of Shaver in the fraudu-
lent matters alleged. Plaintiff also proved that Neal had
notice before Shaver sold and conveyed to him the land, of all
the alleged transactions between plaintiff and Shaver, including
the execution of the note for purchase money and the mort-
gage to secure the same, etc. It was also proven that the land
was well worth $300, and that Neal in fact paid Shaver but
$100 for it, having purchased of him another tract at the same
time, which was included in the deed from Shaver to Neal; and
that Shaver was in possession of the land when he sold it to
Neal.

The court rendered a decree against Shaver for the amount
of the $300 note and interest, and condemned the land to be
sold to satisfy the decree, and Neal appealed to this court.

I. Had Jones merely sold and conveyed the land to Shaver
and taken a note for the unpaid purchase money, he would have
had an equitable vendor's lien upon the land for the payment
of the note, and appellant having purchased the land of Shaver
with notice that the purchase money was not paid, would have
taken the land subject to the vendor's equitable lien.

But Jones took a mortgage back from Shaver upon the land
to secure the payment of the purchase money note, and thereby
waived his equitable lien, and had to rely upon the mortgage.
1 Jones on Mortgages, sec. 207, etc.; Bispham Eq., sec. 355;
*Fish* v. *Howland*, 1 Paige, chap. 30: *Young* v. *Wood et al.*, 11
B. Mon., 128; *Mattix* v. *Weand et al.*, 19 Ind., 151; *Harris*
v. *Harlan*, 14 Ib., 434; *Shelby* v. *Perrin*, 18 Texas, 515;
*Hadley et al.* v. *Pickett*, 25 Ind., 450; *Little et al.* v. *Brown*,
2 Leigh., 353; *Mims* v. *Macon et al.*, 3 Kelly, 343.

II. At the time the deed and mortgage back were burned,
Jones being dead, the legal title to the land was in his heirs at
law, by virtue of the mortgage, and the equitable title was in
Shaver, and the destruction of the deed did not divest Shaver

of his title and vest it in the heirs of Jones. The legal existence of the deed and mortgage continued, though the papers on which they were written were burned. *Strawn* v. *Norris et al.*, 21 Ark., 80.

III. After the title papers were burned, Shaver sold and conveyed the land to appellant, Neal. If there was nothing in the case but the fact that appellant had notice, at the time he purchased the land, of the existence of the unrecorded and unsatisfied mortgage, he would have taken the land discharged of the mortgage : because, under repeated decisions of this court, construing the statute providing for the registration of mortgages, (Gantt's Digest, chap. 98) actual notice of an unrecorded mortgage does not defeat the title of a subsequent purchaser. *Main* v. *Alexander*, 9 Ark., 112 ; *Jacoway* v. *Gault*, 20 Ark., 190 ; *Hannah* v. *Carrington*, 18 Ib., 105 ; *Carnall* v. *DuVal*, *adm'r*, 22 Ib., 136 ; *Jarratt et al.* v. *McDaniel et al.*, 32 Ib., 602.

But there is more in this case than mere notice of an unrecorded mortgage. There was a stipulation in the mortgage, that if Shaver should fail or be unable to pay the note secured by the mortgage promptly at its maturity, the contract of sale should be rescinded so far as that Shaver should reconvey the land to Jones, and he should deliver up to Shaver the note. After the maturity of the note, the parties were together, and Shaver expressing his inability to pay the note, the parties mutually agreed that as the deed and mortgage had not been put upon the public records, they would rescind the sale, as provided for by the mortgage, by burning the deed, mortgage and note, but inasmuch as Shaver had not the deed with him, the parties were to meet again soon thereafter, and comply with this agreement. But for this agreement, Jones acting as a prudent man would ordinarily act, might have protected himself against a subsequent conveyance of the land by Shaver,

by causing the mortgage to be recorded. But the death of Jones prevented the subsequent meeting of the parties. A few days after the death of Jones, Shaver went to the house of Speigle, who had become his administrator, and proposed to burn the title papers and note in compliance with the agreement between him and Jones, and Speigle having been present when the agreement was made, and believing it to be right, consigned the mortgage and note to the flames, and Shaver put the deed in the fire in his presence. But for this, Spiegle might, and it would have been his duty as an administrator, to cause the mortgage to be recorded for the protection of the estate which he represented. But the conduct of Shaver deceived him, and induced him to burn the mortgage, and thereby put it out of his power to cause it to be recorded without the trouble and expense of reproducing it.

After the death of Jones, and before Shaver went to Speigle to induce him to burn the mortgage and note, he caused his deed to be recorded, and concealed this fact from Spiegle when he induced him to consign them to the flames, and burned the original deed in his presence. This was an ugly fraud. After having so deceived and deluded Spiegle, he sold and conveyed the land to his brother-in-law, the appellant, who, according to the bill of exceptions, had full knowledge of all of the above facts, for one-third of its value. A court of equity would not have permitted Shaver to take advantage of the fraudulent registration of his deed, but would have opened the agreement upon which the mortgage, note and deed were burned. Nor can the appellant, in equity and good conscience, be allowed to avail himself of a fraud of which he had full knowledge, and which he aided Shaver in attempting to perpetrate by purchasing the land of him.

But we do not think the court below should have rendered a decree against Shaver for the amount of the note and inter-

est to the date of the decree, and condemned the land to be sold to satisfy the decree, but should have enforced the agreement between the parties upon which the title papers and note were burned.

The decree must be reversed, and a decree entered here cancelling the deed from Jones to Shaver and its fraudulent registration, and the deed from Shaver to appellant so far as the land in question is concerned, and the legal title to the land will stand in the heirs at law of Jones, subject to the control which the statute gives of it to his administrator as assets, etc.

The decree of the court below for costs against Shaver and appellant will not be disturbed.