CUMBERLAND BUILDING & LOAN ASS'N et al. v. SPARKS et al.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1901)

No. 1,547.

1. MORTGAGES—DEFECTIVE ACKNOWLEDGMENT—EFFECT UNDER ARKANSAS STATUTE.

It is a rule of property in Arkansas, established by decisions of the supreme court of the state, and binding on the federal courts, that under Sand. & H. Dig. § 5091, which provides that a mortgage shall be a lien only from the time it is filed for record, a mortgage does not become a lien as to third parties, although recorded, and although they have actual notice of its existence and knowledge of its contents, unless it was properly acknowledged as required by the statute.

2. SAME—PURCHASERS OF MORTGAGED PROPERTY—ACTUAL KNOWLEDGE OF DEFECTIVE MORTGAGE.

A mortgagee cannot impute fraud to a purchaser of the mortgaged property because he bought with actual knowledge of the mortgage, and

with the intention of defeating the same on the ground that it was not properly, acknowledged, where by the laws of the state such a mortgage did not create a lien as against purchasers.

**3.** SUBROGATION—PERSON ADVANCING MONEY TO PAY INCUMBRANCE.

Where money is lent in pursuance of an express agreement that it is to be used to discharge an existing incumbrance on the borrower's property, and that the lender is to have a first lien upon the property to secure its repayment, such lender may be subrogated to the rights of the incumbrancer whose debt has been paid, not only as against the borrower, but as against any one else who subsequently acquires an interest in the property with knowledge of the circumstances under which the money was lent.[1]

**4.** SAME—SUBSEQUENT PURCHASER—NOTICE.

Defendants purchased real estate after one of them, who was an attorney at law, had examined the records as to title. Such records disclosed a mortgage from the vendor to complainant for borrowed money, but which was not properly acknowledged, and for that reason, under the laws of the state, did not create a lien as to purchasers. But such records also showed a prior valid mortgage on the property for nearly the same amount which had been discharged of record in consideration of payment of the debt secured within two or three days after the date of complainant's mortgage. Defendants also had actual knowledge of complainant's mortgage. *Held,* that such facts were sufficient to charge defendants with notice not only that the money borrowed from complainant was used in discharging the prior mortgage, but that it was so used pursuant to an agreement to that effect between complainant and the borrower, which was a fair inference from the facts known, and that they took title subject to the right of complainant to be subrogated to the lien of the discharged mortgage.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

The Cumberland Building & Loan Association and A. Moore Berry, as trustee, the appellants, on February 12, 1900, exhibited a bill of complaint against G. N. Sparks and Parmelia J. Sparks, his wife, and against J. W. Killough and O. N. Killough, the appellees, to foreclose a mortgage on certain property, being the S. E. ¼ of block 5 in Brookfield's Original division of the town of Wynne, Cross county, Ark., which mortgage was executed by the defendants G. N. Sparks and Parmelia J. Sparks on March 25, 1895, to secure a loan evidenced by a promissory note in the sum of $2,000. The bill averred that said loan was made to Sparks and wife to enable them to pay off a prior incumbrance on the property aforesaid in the sum of about $1,800, which was held at the time by R. G. Oliver, as guardian for the minor heirs of O. D. Oliver; and that the sum of $2,000 loaned as aforesaid was in fact used to pay and discharge the last-mentioned incumbrance. The bill further alleged that on May 17, 1897, Sparks and wife conveyed the mortgaged property to the defendants J. W. Killough and O. N. Killough for a consideration which was declared to be the full value of the property, but that said conveyance was in fact made without any consideration, for the purpose of hindering, defrauding, and delaying the creditors of G. N. Sparks. It was further averred that the aforesaid loan to Sparks and wife was made originally by the Southern Saving Fund & Loan Company, and that the mortgage or deed of trust securing the same conveyed the property to A. Moore Berry, one of the complainants, as trustee for said Southern Saving Fund & Loan Company; that the mortgage indebtedness and the mortgage securing the same were assigned to the complainant the Cumberland Building & Loan Association on November 18, 1896, and that default had been made in the payment of the indebtedness secured by the mortgage. In view of the premises, the complainants prayed that a decree of foreclosure and sale

---

[1] Subrogation to rights of mortgagee, see note to Rachel v. Smith, 42 C. C. A. 304.

might be entered, or, if such relief was not deemed proper, then that the satisfaction of the prior mortgage existing on the premises in favor of R. G. Oliver, as guardian (which mortgage bore date May 1, 1894), might be set aside and for naught held, and that the Cumberland Building & Loan Association might be subrogated to all the rights and privileges of the beneficiaries under the last-mentioned mortgage, and that the property be sold to enforce the payment of the indebtedness evidenced by the Oliver mortgage. To the aforesaid bill the defendants J. W. Killough and O. N. Killough filed an answer, wherein they admitted the purchase of the mortgaged premises from Sparks and wife on or about May 17, 1897. They denied that said purchase was without consideration, or that the purchase was made for the purpose of hindering, defrauding, or delaying the creditors of Sparks. They averred, on the contrary, that they paid full value for the mortgaged property, first having satisfied themselves from an examination of the record that the title to the mortgaged premises was clear, and not subject to any lien; and that in point of fact the mortgage of March 25, 1895, in favor of the Southern Saving Fund & Loan Company was not executed in a manner which entitled it to go of record, and for that reason, under the laws of the state of Arkansas, was no notice to them of any subsisting lien upon the property in controversy. They further averred that they took possession of the property, having paid for it in full, shortly after the conveyance of the same to them by Sparks and wife, and had been in the open, notorious, and continuous possession of the same since the date of said conveyance. Sparks and wife filed a separate answer, in which they admitted the conveyance of the property in controversy to J. W. Killough and O. N. Killough on May 17, 1897, but they denied that such conveyance was made by them without consideration, or that it was made with a view of hindering, delaying, or defrauding the creditors of said Sparks. After a trial upon these issues, the lower court held that the bill was without equity, and directed that the same be dismissed, at the complainants' costs. 106 Fed. 101. From this decree the complainants below have prosecuted an appeal to this court.

G. B. Webster, for appellants.

N. W. Norton (J. M. Prewett, on the brief), for appellees.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The laws of Arkansas (Sand. & H. Dig. §§ 707, 5090) require deeds and mortgages conveying real property located in that state to be executed in the presence of two disinterested witnesses, or, if not so executed, that they be acknowledged in the presence of two persons, who shall then subscribe their names to the deed or mortgage as attesting witnesses. The mortgage or deed of trust which was executed on March 25, 1895, by Sparks and wife in favor of the Southern Saving Fund & Loan Company was neither executed nor acknowledged in the presence of two disinterested witnesses, as the local law required, and for that reason it is conceded that it was not entitled to go of record. Moreover, the laws of the state of Arkansas (Sand. & H. Dig. § 5091) contain the following provision:

"Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage."

This statute has been construed repeatedly by the supreme court of the state of Arkansas. Beginning with the decision in Main **v.**

Alexander, 9 Ark. 112, 47 Am. Dec. 732, it has been held in a long line of cases, and the doctrine is so well established as to have become a rule of property in that state which is binding upon the federal courts, that, unless a mortgage is properly acknowledged, the record thereof imparts no notice of its contents to a third party, although he has actual notice of its existence and knowledge of its contents; the theory being that by virtue of the statute aforesaid no lien is created by a mortgage, so far as strangers to the instrument are concerned, unless it is first acknowledged and recorded as the law directs. Under the statutes and decisions of that state, a mortgage is good, as it seems, between the parties thereto, after it is delivered to the mortgagee; but it has no force or effect as against strangers, although they have knowledge of the same, until it is placed of record, first having been properly acknowledged. Jacoway v. Gault, 20 Ark. 190, 73 Am. Dec. 494; Jarratt v. McDaniel, 32 Ark. 598, 602; Neal v. Speigle, 33 Ark. 63, 68; Martin v. O'Bannon, 35 Ark. 62, 68; Ford v. Burks, 37 Ark. 91, 94, 95; Dodd v. Parker, 40 Ark. 536; Wright v. Graham, 42 Ark. 140, 148; Watson v. Lumber Co., 49 Ark. 83, 4 S. W. 62; Milling Co. v. Mikles, 61 Ark. 123, 128, 32 S. W. 493. Such being the local law, it follows, of course, that the defendants J. W. Killough and O. N. Killough, who purchased the mortgaged property on May 17, 1897, from Sparks and wife, the mortgagors, acquired a good title thereto, free from the lien of the mortgage in favor of the Southern Saving Fund & Loan Company, which the complainant, as assignee of the mortgage, seeks to foreclose, unless it be true, as is alleged in the bill, that the conveyance by Sparks and wife to J. W. Killough and O. N. Killough was made without consideration, and with intent on the part of the persons concerned in that transaction to hinder, delay, or defraud the creditors of G. N. Sparks. The finding of the lower court, however, as respects this latter issue, was in favor of the defendants and against the complainants. The evidence of all the witnesses who were produced tended to show that the Killoughs purchased the mortgaged property from Sparks on May 17, 1897, at an agreed price of $2,500, which sum was paid in full at the time of the purchase by conveying to Sparks a one-half interest in a stock of goods valued at about $2,250, and by discharging certain debts which Sparks owed to the purchasers and certain other persons, amounting in the aggregate to something over $1,300. The complainants produced no evidence which tended to show that the mortgaged property was not paid for in the manner aforesaid. It did appear, however, that the Killoughs, as they admit in their answer, were aware of the existence of the outstanding mortgage in favor of the Southern Saving Fund & Loan Company, but, as the laws of the state permitted them to make the purchase notwithstanding such knowledge, and to hold the property exempt from the lien of the mortgage, because it was not properly acknowledged, fraud cannot be imputed to the purchasers because they saw fit to exercise this legal right. Aside from the fact that they did buy the mortgaged property with knowledge of the existing incumbrance, there is no other evidence in the record which will serve

to cast suspicion on the conduct of the purchasers, or which would justify the conclusion that they hold the property in secret trust for Sparks, or that their motive in buying it was to enable Sparks to perpetrate a fraud upon his creditors. It is most probable, we think, that the Killoughs were induced to purchase the property because it was offered to them at a low price, and because by so doing they could make a profit by the transaction, and at the same time obtain payment of certain debts which Sparks appears to have owed them. If they were induced to make the purchase for the reasons last stated,—as they probably were,—then their conduct cannot be pronounced fraudulent, since they did nothing more than the local law permitted and encouraged them to do. The statutes of the state allowed them to take advantage of the defect in the complainants' mortgage, and to profit by the mistake of the mortgagee; and, however reprehensible such conduct may seem to be when judged from a purely moral standpoint, it cannot be pronounced fraudulent from a legal point of view, nor will such conduct justify the imputation of fraud. We accordingly conclude that the mortgage in question cannot be enforced as against the purchasers of the mortgaged property.

The next and the most important question in the case is whether, on the principle of subrogation, the complainant company can be treated as the equitable assignee of the deed of trust held by R. G. Oliver, as guardian of the minor heirs of C. D. Oliver, and whether the indebtedness secured by that deed of trust can be treated as still subsisting, and be enforced against the mortgaged property for the benefit of the complainant company, although it has been discharged of record. This latter deed of trust, as stated above, was executed about May 1, 1894, by Sparks and wife. It was properly acknowledged and recorded, and was paid and discharged of record on March 27, 1895, out of the proceeds of the loan which was made by Sparks and wife from the Southern Saving Fund & Loan Company, hereafter termed the "Saving Fund Company." For these reasons counsel for the complainant company insists that it ought in equity to be subrogated to all of the rights of the beneficiaries under the aforesaid deed of trust. Courts of equity are most frequently called upon to enforce the right of subrogation where one pays the debt of another which he was under a legal obligation to pay, either because he was a surety or a guarantor. In such cases privity exists between the surety or guarantor and the creditor whose debt is discharged in such a sense that, when the creditor receives payment from the surety or guarantor, he is under an obligation to make over or assign to him all property or securities which may have been pledged or hypothecated by the principal debtor to secure the payment of the debt. The law creates or implies a contract on the part of the creditor that such property or securities will be turned over to the one who is secondarily liable as soon as he pays the creditor's claim. It is manifest, however, that in the case at bar no privity of contract existed between the Saving Fund Company and the holder of the Oliver deed of trust when the latter incumbrance was discharged. The last-named company was under no obligation, either as a surety or

a guarantor, to pay the debt secured by the Oliver deed of trust, nor could it have compelled Oliver to accept payment of the debt from it. The evidence shows that the negotiations for the loan from the Saving Fund Company were conducted wholly by Sparks, and the most that can be said concerning these negotiations is that Sparks undoubtedly agreed at the time the loan was made that the Saving Fund Company should have a first lien on the property in controversy to secure the repayment of the loan, which lien could not be given or created until the Oliver deed of trust was discharged of record. This agreement, however, between Sparks and the Saving Fund Company, which contemplated the execution of a new deed of trust, did not create any privity as between Oliver and the Saving Fund Company, for in advancing the money to pay off the latter deed of trust the Saving Fund Company acted merely as a volunteer, being at the time under no obligation to advance the money or make the payment.

It is urged, however, that, notwithstanding the want of privity, the complainant is entitled to be treated as the equitable assignee of the Oliver deed of trust because it made the loan in question upon the understanding that it was to have a first lien on the mortgaged property, and in support of that contention the following authorities are cited: Association v. Thompson, 32 N. J. Eq. 133; Tyrrell v. Ward, 102 Ill. 29; Bank v. Bierstadt, 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146; Draper v. Ashley, 104 Mich. 527, 62 N. W. 707; Wilton v. Mayberry, 75 Wis. 191, 43 N. W. 901, 6 L. R. A. 61, 17 Am. St. Rep. 193; Levy v. Martin, 48 Wis. 198, 4 N. W. 35; Trust Co. v. Peters, 72 Miss. 1058, 18 South. 497; Dillon v. Kauffman, 58 Tex. 696. Without going over these authorities in detail, it will suffice to say that they sustain the following propositions: That where money is advanced to a debtor in pursuance of an express agreement that it is to be used to retire existing liens or incumbrances on his property, and that the creditor who loans the money is to have a first lien upon the property to secure its repayment, such creditor may be subrogated to the rights of the incumbrancer or lienor whose debt has been paid, not only as against the borrower, but as against any one else who subsequently acquires an interest in the property with knowledge of the circumstances under which the money to pay off the incumbrances or liens was advanced. They further hold that, if money is advanced to a debtor to discharge an existing first mortgage upon his property, and in pursuance of an agreement that lender is to have a first lien upon the property for the repayment of the sum loaned, the lender is entitled, as against a junior incumbrancer, to be treated as the assignee of the first mortgage which has been paid off and discharged with the money loaned, whenever it becomes necessary to do so to effectuate the agreement with the lender, and to prevent the junior incumbrance from being raised accidentally to the dignity of a first lien, contrary to the intention of the parties. The species of subrogation mentioned in both of these instances is what has been termed "conventional subrogation," and does not depend upon the establishment of any privity of contract. Now, it is true that the Killoughs were not junior incumbrancers

when the deed of trust in favor of the Saving Fund Company was executed. They became purchasers of the mortgaged property, for value, two years later, and, as they say, bought it on the faith of the title as it appeared of record; so that the last of the two propositions stated above has no application to the case in hand. But the first of the above propositions is applicable to the present controversy, and as the doctrine enunciated is reasonable, and well supported by authority, the point to be determined is whether the evidence contained in the present record is sufficient to justify the conclusion that when the Killoughs became the purchasers of the mortgaged property on May 17, 1897, they were aware of the agreement between Sparks and the Saving Fund Company that the Oliver deed of trust was to be paid off and discharged with the proceeds of that loan, so as to give the lender a first lien on the mortgaged property. If they were aware of that understanding when they made the purchase, then the complainant is entitled to be subrogated to all the rights of the beneficiaries under the Oliver deed of trust before it was paid, and the same may be enforced at this time as an unpaid incumbrance for the complainant's benefit. Turning to the record, the evidence, as already stated, clearly shows that Sparks expressly agreed with the Saving Fund Company, as a condition of the loan which he sought to obtain, that the money to be loaned should be applied to retiring the Oliver debt and releasing the property from the prior mortgage, so that the Saving Fund Company should have a first lien upon the property for the repayment of the loan. Pursuant to that agreement, the Saving Fund Company advanced the money and issued its check payable to Sparks for the net proceeds, $1,973. This check was indorsed to Oliver, and by him collected. He retained about $1,800, which was due to him on the deed of trust by him held, and accounted to Sparks for the balance. The Oliver deed of trust was thereupon released of record by a deed of release which recited the execution of the Oliver mortgage, and that the debt secured thereby had been paid. This was done on March 28, 1895. The deed of trust in favor of the Saving Fund Company was dated March 25, 1895, and acknowledged March 27, 1895, and, although it was not a recordable instrument under the laws of the state of Arkansas, yet it was in fact recorded in the land records of Cross county. O. N. Killough, who had charge of the transaction in behalf of himself and his father, in the course of which they purchased the property from Sparks on May 17, 1897, was an attorney at law with at least 10 years' experience. He admitted that he examined the records before he and his father made the purchase, and that he found the mortgage of the Saving Fund Company, and examined the same. Prior to the purchase, therefore, both he and his father had actual knowledge of the facts disclosed by it, namely, that on or about March 25, 1895, Sparks obtained a loan from the Saving Fund Company and had executed a mortgage upon the land in question to secure its repayment. They also had constructive knowledge from the records of the original Oliver mortgage and of the contents of the deed whereby it was released, and knew that this release was made contemporaneously with the execution of the deed of trust in favor of the Sav-

ing Fund Company. They also had constructive knowledge that the deed of release then on record recited that Sparks had paid off the Oliver debt, and of the date when it was paid. So much information, at least, was conveyed by the record, and cannot be denied. From what has been said, it is manifest, therefore, that the Killoughs knew, before they purchased the land in question, that Sparks had, on March 25, 1895, borrowed $2,000 from the Saving Fund Company, and at the same time had paid the Oliver mortgage amounting to $1,800; and these facts, with the reasonable and fair inferences deducible therefrom, are, in our opinion, entirely sufficient to charge the Killoughs with knowledge not only that the Saving Fund Company's money was actually used to discharge the Oliver debt and mortgage, but that it was so used pursuant to an agreement to that effect between said company and Sparks. It is impossible, we think, that the transactions disclosed by the foregoing deeds and records, producing the result of substituting one mortgage security for another, could have been conducted between the parties to it without a prior agreement or understanding to that end, and it is equally impossible to believe that any one, and particularly an attorney at law, could have been aware of the facts aforesaid without also knowing, or at least having sufficient ground to believe, that the money was obtained from the Saving Fund Company for the purpose of paying off the Oliver deed of trust, and under an agreement with the lender that it would be used for that purpose. In considering such evidence the trior of the fact cannot close his eyes to the usual and ordinary course of procedure in such transactions. "The law is well settled," says the supreme court of Indiana in Mettart v. Allen, 139 Ind. 644, 39 N. E. 239, "that a man is regarded as notified of whatever appears on the instrument which constitutes his chain of title, and whatever is sufficient to put him on inquiry is sufficient to charge him with whatever an ordinarily diligent search would have disclosed, and that all deeds referred to as being in any way connected with the title, as well as those upon which the title is based, must be examined as to any facts they may contain, at the purchaser's peril." See, also, Knowles v. Williams, 58 Kan. 221, 48 Pac. 856; Martind. Conv. (2d Ed.) §§ 74, 277.

There are other persuasive facts which deserve consideration. Sparks failed in business in 1893, owing a large number of mercantile debts, and at the time of the transactions involved in this suit was a bookkeeper working on a salary. The Killoughs had known him for a long time, and they admitted knowledge of his financial embarrassments and condition after 1893. Surely, they ought to have known, or to have had a strong suspicion, that Sparks did not have $1,800 to pay Oliver in 1895, unless it was part of the money which he borrowed from the Saving Fund Company; and they ought to have known, and doubtless did know, that the Saving Fund Company would not have loaned him the amount of money which it did except in pursuance of his agreement to discharge the Oliver deed of trust, so as to make its deed of trust a first lien. Besides, the Killoughs admit that they deliberately went about the business of purchasing the land from Sparks with actual

knowledge of the real rights of the Saving Fund Company, and with the deliberate purpose of profiting by its mistake. The testimony of the Killoughs shows that Sparks first informed them of the defect in the acknowledgment of the deed of trust in favor of the Saving Fund Company, but they say that they did not make the purchase until they had made an examination of the record to confirm Sparks' statement. Their scheme, therefore, was a deliberate one to take advantage of a known mistake of the Saving Fund Company. In view of the knowledge which the Killoughs derived from the foregoing sources, as well as from the knowledge shown to have been acquired by them by reason of their intimate relations with Sparks, we are constrained to believe, and so find, that the Killoughs, when they bought the property in controversy, had knowledge that the Oliver deed of trust had been paid off with money obtained from the Saving Fund Company, and that the money was loaned by the latter company pursuant to an express agreement that it would be used for that purpose, and that the money advanced should be secured by a first lien on the mortgaged property. To give effect to this agreement, which was known to the Killoughs, and to accomplish the ends of justice, the complainant is entitled to be subrogated to the rights of the beneficiaries under the Oliver deed of trust, treating that as still unpaid, and as having been assigned, in effect, to the Saving Fund Company at the time it was released of record.

It is accordingly ordered that the decree below be reversed, and that the cause be remanded to the circuit court, with directions for further proceedings therein in accordance with this opinion.