---

In re LEE.

(Circuit Court of Appeals, Eighth Circuit. October 10, 1910.)

No. 104.

*(Syllabus by the Court.)*

1. BANKRUPTCY (§ 440*)—REVIEW—APPEAL OR PETITION FOR REVISION—ADJUDICATION OF CREDITOR'S CLAIM OF LIEN—REVIEWABLE EITHER WAY—"PROCEEDING IN BANKRUPTCY."

A decision of a controversy arising in bankruptcy proceedings which involves the validity of the claim of a creditor to a lien upon the property of the bankrupt, or its proceeds under administration in possession of the court, is a proceeding in bankruptcy within the meaning of section 24b of the bankruptcy law and reviewable in matter of law upon a petition to revise.

The grant of jurisdiction to the Circuit Court of Appeals (Bankruptcy Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3431]) to review by appeal the final decision of a controversy arising in bankruptcy proceedings of which that court would have had appellate juris-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

diction if it had arisen in any other case in the federal court, and the grant of jurisdiction to revise and superintend in matter of law the proceedings of the inferior courts of bankruptcy (section 24b [U. S. Comp. St. 1901, p. 3431]), are not exclusive of each other, but cumulative or concurrent grants, the former of jurisdiction to review questions of law and of fact, the latter of jurisdiction to review questions of law only.

An aggrieved party often has a choice of these methods.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 440.*

For other definitions, see Words and Phrases, vol. 6, pp. 5631–5638.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 440*)—PETITION TO REVISE—QUESTIONS OF LAW ON AGREED FACTS REVIEWABLE.

Decisions of issues of law which arise on agreed or proved facts that are neither contradictory nor doubtful and that leave nothing but their legal effect for determination may be reviewed by petition to revise under section 24b (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3431]).

But the review of such decisions which require the consideration of conflicting evidence regarding controverted facts may not be invoked successfully by such a petition.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 440.*]

3. SUBROGATION (§ 23*)—BANKRUPTCY (§ 314*)—LOAN TO PAY INCUMBRANCE UNDER AGREEMENT OF OWNER TO GIVE LIKE LIEN ENTITLES TO SUBROGATION.

Where money is lent in pursuance of an express agreement that it is to be used to discharge an existing incumbrance on the borrower's property and that the lender is to have a first lien upon the property to secure its payment, and the money is so used, such lender may be subrogated to the rights of the incumbrancer whose debt has been paid, not only as against the borrower, but also as against his trustee in bankruptcy, and as against any one else who subsequently acquires an interest in the property with knowledge of the circumstances under which the money was lent.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. § 23;* Bankruptcy, Dec. Dig. § 314.*

To rights of mortgagee, see note to Rachal v. Smith, 42 C. C. A. 304.]

Reed, District Judge, dissenting.

Application of F. J. Lee for the establishment of a lien on certain real estate in possession of a bankrupt at his adjudication. Order denying the application and the creditor petitions to review the judgment. Reversed.

R. L. Holmes and Charles G. Yankey, for petitioner.

David Smyth and A. E. Helm, for trustee.

Before SANBORN and ADAMS, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. A petition to revise under section 24b of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3431]) challenges in this case the decision of the court below that the petitioner, F. J. Lee, had no lien upon certain real estate which was in the possession of the bankrupt at the time of his adjudication and which, at the request of the petitioner, was sold under

an order of the referee that its proceeds should stand in its place subject to the same liens that had attached to the land.

The trustee moves to dismiss this petition on the grounds (1) that the case involves a controversy arising in bankruptcy proceedings under section 24a as distinguished from proceedings in bankruptcy under section 24b, and that the decision in it is reviewable by appeal only; and (2) that its determination involves a consideration of evidence and a determination of disputed facts. The land which was the subject of this controversy was a part of the estate of the bankrupt held by the court below in trust to sell and to distribute its proceeds to its creditors. With the consent and at the request of the creditor, Lee, the court sold it, held its proceeds in the place of the property and subject to the same liens, and adjudged the validity of his claim. Undoubtedly there is a controversy here arising in a bankruptcy proceeding which is reviewable by appeal under section 24a, but there is no prohibition in the bankruptcy law of the revision in matter of law of such a controversy under section 24b, and, if no controversy arising in bankruptcy proceedings may be reviewed under the latter section, then nothing may be reviewed under it, because, where there is no controversy, there is nothing to review or to decide. The fact is that the grant of jurisdiction to the Circuit Court of Appeals to review by appeal the final decision of a controversy arising in bankruptcy proceedings of which that court would have had appellate jurisdiction if it had arisen in any other case in a federal court under section 24a, and the grant of jurisdiction to revise and superintend in matter of law the proceedings of the inferior courts of bankruptcy under section 24b, are not exclusive of each other, but cumulative or concurrent grants, the former of jurisdiction to review questions of law and of fact, the latter of jurisdiction to review questions of law alone. An aggrieved party often has a choice of these methods. A decision of a controversy arising in bankruptcy proceedings which involves the validity of the claim of a creditor to a lien upon the property of the bankrupt, or its proceeds under administration in possession of the court, is a proceeding in bankruptcy within the meaning of section 24b of the bankruptcy law and reviewable in matter of law upon a petition to revise. In re Holmes, 142 Fed. 391, 393, 73 C. C. A. 491, 493; Dodge v. Norlin, 133 Fed. 363, 367, 66 C. C. A. 425, 429; In re McKenzie, 142 Fed. 383, 385, 73 C. C. A. 483, 485; John Deere Plow Co. v. McDavid, 137 Fed. 802, 810, 70 C. C. A. 422, 430; Security Warehousing Co. v. Hand, 143 Fed. 32, 38, 74 C. C. A. 186, 192; Franklin v. Stoughton Wagon Co., 168 Fed. 857, 860, 94 C. C. A. 269, 272; Thomas v. Woods, 173 Fed. 585, 588, 97 C. C. A. 535, 538, 26 L. R. A. (N. S.) 1180.

There is no doubt that a petition to revise will not lie to invoke the consideration of evidence to determine disputed questions of fact, but the record is that this controversy was tried and decided upon agreed facts which are spread before us. The petition alleges that the case was finally heard and tried before the referee on December 17, 1909, "and on said date R. B. Campbell, trustee of said estate, by his attorneys, entered into an agreed statement of facts, which statement and stipulation did cover and include all the facts in connection with said

matter. A duly certified copy of said agreed statement of facts is hereto attached marked 'Exhibit F,' " that the referee allowed the petitioner's claim, and denied his lien and the court affirmed that decision. The trustee did not answer this petition, and there is no denial of these allegations. The agreed facts recited in the stipulation are not contradictory, doubtful, or incomplete, and the only question there presented is their legal import. The motion to dismiss the petition must therefore be denied.

On July 28, 1908, one Hollicke had recovered a judgment for $522.-22 against the bankrupt on its promissory note which was secured by a mortgage upon its land. The contention of counsel for the trustee that this mortgage had been released in January, 1908, has not been overlooked. It rests upon the fact that there is in the record a copy of this mortgage and of the following endorsements upon it:

"The amount secured by this mortgage has been paid in full and the same is hereby cancelled this 3rd day of January, 1908. J. F. Hollicke. Filed August 21, 1908, 9 A. M. and recorded on margin of record. T. E. Keller, Register of Deeds. J. E. Farrow, Deputy."

But the legal presumption is that the mortgage was in the possession of Hollicke, the mortgagee, on January 3, 1908, and his indorsement of a release upon it without a delivery thereof to the mortgagor or to the owner of the property would be ineffective. The mortgage was not paid until July 28, 1908. There is no evidence that the release was delivered before that date. It is not probable that Hollicke delivered it before the mortgage was paid, and the agreed statement of facts reads:

"Heretofore and prior to the 28th day of July, 1908, one J. F. Hollicke had a mortgage on certain property owned by the bankrupt at that time, * * * a copy of which with the endorsements thereon is hereto attached."

This condition of the record convinces that the mortgage had not been released on July 28, 1908, when the bankrupt persuaded the petitioner to advance to it $522.22 in reliance upon the security which it furnished. This mortgage had been made in June and had been recorded in July, 1907. In this state of the case the bankrupt on July 28, 1908, agreed in writing to procure an assignment of this mortgage to the petitioner Lee to secure to him the repayment of $522.22, and that he should be subrogated to all the rights of Hollicke, the mortgagee therein, if he would advance to it that amount of money to enable it to pay Hollicke's judgment against it, and thereby to prevent a seizure and sale of its property, and the petitioner advanced this money to the bankrupt and with it the bankrupt paid the judgment and saved its property from sale thereunder. But Hollicke refused to assign the mortgage, and on August 21, 1908, the release of it which has been recited was recorded in the office of the register of deeds. After the petitioner had loaned the money to the bankrupt and had received his agreement of subrogation, and after the bankrupt had paid the judgment against it and had demanded of Hollicke that he assign his mortgage to the petitioner, and after Hollicke had refused to do so and the bankrupt had informed the petitioner of his refusal, the bankrupt within four months of its adjudication gave to the petitioner a new mort-

gage upon the same property to secure the repayment of his loan. But there is a claim that this new mortgage was not given for a present consideration, and it was never recorded.

Counsel argue that this second mortgage was voidable by the trustee because it was made so long after Lee loaned the money that it constituted a voidable preference under section 60b of the bankruptcy law, and because it was not recorded. But it does not seem to be necessary to discuss or decide the questions presented by this contention. If this second mortgage was valid, it created a lien upon the property, and entitled the petitioner to the relief he sought. If it was void or voidable, why was he not entitled to be subrogated to the rights of Hollicke under his mortgage which the money of the petitioner paid? May not one who, in reliance upon the agreement of the owner of property to give him a first lien thereon to secure his repayment, loans money to pay off a prior incumbrance and takes a defective mortgage or other security, be subrogated to the rights of the prior incumbrancer so far as necessary to secure the payment of his claim? This question received an exhaustive examination and the most thoughtful consideration of this court in 1901, in the case of Cumberland Building & Loan Ass'n v. Sparks, 111 Fed. 647, 651, 652, 653, 49 C. C. A. 510, 514, 515. The Cumberland Building & Loan Association had made a loan to the owner of real estate to pay off a debt secured by a trust deed thereon, the money had been used for that purpose, the trust deed had been released, a defective and void mortgage on the property had been given to the association, and third parties who knew these facts had subsequently purchased of the owner and paid the full value of the property. Judge Thayer expressed the opinion of the court with his usual conservatism and accuracy to the effect that the authorities cited below held and the law was:

"That when money is advanced to a debtor in pursuance of an express agreement that it is to be used to retire existing liens or incumbrances on his property, and that the creditor who loans the money is to have a first lien upon the property to secure its repayment, such creditor may be subrogated to the rights of the incumbrancer or lienor whose debt has been paid, not only as against the borrower, but as against any one else who subsequently acquires an interest in the property with knowledge of the circumstances under which the money to pay off the incumbrances was advanced." Association v. Thompson, 32 N. J. Eq. 133; Tyrrell v. Ward, 102 Ill. 29; Bank v. Bierstadt, 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146; Draper v. Ashley, 104 Mich. 527, 62 N. W. 707; Wilton v. Mayberry, 75 Wis. 191, 43 N. W. 901, 6 L. R. A. 61, 17 Am. St. Rep. 193; Levy v. Martin, 48 Wis. 198, 4 N. W. 35; Trust Co. v. Peters, 72 Miss. 1058, 18 South. 497; Dillon v. Kauffman, 58 Tex. 696.

The rule thus announced is just and reasonable, is in accord with the decisions of the Supreme Court of Kansas, where the property involved in this litigation is located (Everston v. Central Bank of Kansas, 33 Kan. 352, 358, 6 Pac. 605; Zinkeison v. Lewis, 63 Kan. 590, 592, 66 Pac. 644), it still commends itself to our judgment, the case at bar falls under it, and we are unwilling to depart from it. On July 28, 1908, the property of the bankrupt was subject to a valid mortgage for $522.22 to Hollicke. It agreed with the petitioner in consideration of his advance of the money to pay that debt that he should have the benefit of that lien and the first mortgage upon the property to secure

the repayment of his money. The debt was paid with that money. If the bankrupt could now repudiate its obligation and hold the property free from the lien because it subsequently made a voidable mortgage, it would secure without compensation, and the petitioner would lose, a large part of the money that the latter advanced. If the petitioner is subrogated to the rights of Hollicke before the mortgage was paid, neither the bankrupt nor his creditors, nor the petitioner can lose, but the property of the former is preserved from sale under the judgment subject to its previous valid incumbrance and the petitioner receives the agreed security for its loan. The claim of Lee is stronger than that of the complainant in Cumberland Building & Loan Ass'n v. Sparks,. 49 C. C. A. 510, 514, 111 Fed. 647, because there is no purchaser for value in this case, but the trustee stands in the shoes of and has no greater rights against Lee than the bankrupt. There is no proof or claim that there are any creditors who permitted the bankrupt to contract debts to them after the release of the Hollicke mortgage in reliance upon its satisfaction, and reason and the law alike demand that the claim of the petitioner to his lien upon the proceeds of the property by subrogation to the rights of Hollicke should be sustained. The order of the District Court which affirmed the report of the referee is vacated and set aside with directions to allow and pay the claim of the petitioner for $522.22 and legal interest from July 28, 1908, as a claim secured by a first lien upon the proceeds of the property mortgaged to Hollicke.

REED, District Judge (dissenting). I am unable to concur in the conclusion reached in the third or last division of the foregoing opinion. The facts as stipulated by the parties are: That prior to July 28, 1908, one Hollicke held a mortgage on real property, then and at the time of the bankruptcy owned by the bankrupt, a Kansas corporation, and had brought suit upon the note secured thereby, and on that date recovered judgment against the bankrupt for the balance due thereon, without a foreclosure of the mortgage. On the same day, July 28th, the bankrupt negotiated with the petitioner for a loan to pay said judgment and as security agreed in writing to procure an assignment to him of said mortgage from Hollicke, and that he "is subrogated to the rights of Hollicke the payee in said note." The petitioner furnished the bankrupt with the money to pay said judgment, and it gave to him its note for the amount and the judgment was paid therewith. Hollicke refused to assign his mortgage and the bankrupt gave to the petitioner a mortgage upon the property covered by the Hollicke mortgage to secure the loan, which mortgage the petitioner accepted, but never filed for record, and it has never been recorded. The bankrupt at such times was insolvent, and the petitioner was one of its stockholders and a director of the corporation. The Hollicke mortgage was satisfied by an indorsement thereon signed by him January 3, 1908, and filed for record August 21st following. The adjudication in bankruptcy was December 18, 1908, but when the petition in bankruptcy was filed does not appear.

It thus appears that on July 28th, more than four months before the adjudication in bankruptcy, the bankrupt corporation negotiated

with the petitioner, who was then one of its directors, for a loan sufficient to pay the judgment which Hollicke that day recovered against it and agreed to procure an assignment of the Hollicke mortgage to him as security therefor, and that he "is subrogated to the rights of Hollicke the payee of the note." When this loan was made, the security taken, and the transaction closed appear only from the date of the writing and the note and mortgage given by the bankrupt to the petitioner, all of which are dated July 28, 1908. Hollicke, not being a party to the agreement to assign his mortgage, was under no obligation to do so, and for some reason not shown refused to assign the same. The petitioner must be held to have known that Hollicke could not be required to assign his mortgage and to have accepted the mortgage of July 28th in lieu of such assignment. If that mortgage was made on the day it bears date or when the loan was made and the transaction closed, whenever that was, it would be for a present consideration and not to secure a prior indebtedness, and if it had then been deposited for record as required by the law of Kansas, where the property is situated, it would have been a valid lien upon the property covered by it. Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117; Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. ——.

The law of Kansas relating to the recording of deeds and mortgages upon real property provides:

"No such instrument in writing shall be valid, except as between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record." Section 1672, Gen. St. Kan. 1909.

The Supreme Court of Kansas has construed this section to mean that, until the instrument is deposited for record, it is not valid, and, in effect, has no legal existence as to any person, or class of persons, except those named therein. Smith v. Worster, 59 Kan. 640, 54 Pac. 676, 68 Am. St. Rep. 385. The petitioner through his own neglect failed to deposit his mortgage for record, and solely because of such neglect has lost the security which the bankrupt gave him, which, if so deposited, would have been equal to the lien of the Hollicke mortgage for there are no intervening liens between them. He now asks that he be subrogated to the rights of Hollicke whose debt has been paid and mortgage discharged. The doctrine of subrogation comes to us from the civil law, and is said to be a legal fiction by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of the person so paying the same. Originally it was allowed only in favor of those standing in the relation of sureties who paid the debt of their principal, being under legal obligation to do so, or junior incumbrancers who paid a prior incumbrance to save their own, or others standing in similar situations. It was never allowed in favor of strangers to the title, or of those who voluntarily paid the debt of another being under no obligation to do so. Ætna Life Insurance Co. v. Middleport, 124 U. S. 534–548, 550, 8 Sup. Ct. 625, 31 L. Ed. 537. But, under a more liberal application of the principles of

equity, it is now generally held that when one loans money for the purpose of paying an existing valid incumbrance upon property and takes as security therefor a defectively executed or void mortgage upon such property, but supposed to be valid, and the money loaned is actually applied to the payment of the prior incumbrance, the lender is not regarded as a stranger to the title or a mere volunteer, and may be subrogated to the rights in the property of the prior lienholder whose debt he has thus paid when to do so will not displace legal or equitable rights accrued since the extinguishment of the prior incumbrance. It was upon this principle that this court acted in Cumberland Building & Loan Association v. Sparks, 49 C. C. A. 510, 111 Fed. 647; and the Supreme Court of Kansas in Everston v. Central Bank, 33 Kan. 352, 6 Pac. 605, and Zinkeison v. Lewis, 63 Kan. 590, 66 Pac. 644, and the cases there cited. In the first of these cases the trust deed or mortgage of the Cumberland Building & Loan Association was so defectively executed, apparently without its knowledge or fault, that it was not legally admissible to record. It was, however, placed of record, but, under the statutes of Arkansas where the property is situated, the record imparted no legal notice to subsequent purchasers or lienholders. The property was subsequently purchased from the mortgagor by one who, as the court found, had actual knowledge of the association's trust deed, and of the fact that the prior incumbrance was paid from the proceeds of the loan made by it, and whose purchase was with the deliberate purpose of taking advantage of a known defect in the execution of such trust deed.

In Everston v. Central Bank one Prescott made a loan which was secured by a forged mortgage upon property hold by the mortgagor under a forged deed of the real owner, and from the proceeds of such loan a prior valid incumbrance upon the property was paid. It was found as a fact that Prescott had no knowledge of the forgeries and that he was not guilty of any negligence in failing to discover them. Everston, the plaintiff, purchased the property with knowledge of the forgeries, taking a quitclaim deed from the real owner, and neither he nor the owner of the property had ever paid or offered to pay the prior incumbrance, or reimbursed Prescott for the amount paid by him to discharge the same. There were no other intervening liens or conveyances. Held, that the defendant bank as assignee in good faith of the Prescott mortgage was entitled to be subrogated to the rights of the prior incumbrancer whose debt was thus paid from the proceeds of the Prescott loan.

In Zinkeison v. Lewis the defendant O. H. Lewis made a mortgage to the plaintiff upon real property which was the homestead of himself and wife to secure a loan made for the purpose of paying a prior valid incumbrance upon the property, and from the proceeds of such loan the prior incumbrance was paid. Lewis signed the name of his wife to the mortgage without her authority, and without her authorized signature a mortgage or other conveyance of the homestead was under the law of Kansas void. Shortly after making the mortgage, Lewis informed his wife that he had signed her name

thereto, and she knew that the greater part of the loan secured by it was to pay, and in fact was used to pay, the prior incumbrance. Interest was paid upon the loan by Lewis with the wife's knowledge for nearly three years, and she with full knowledge that her name had been signed to the mortgage by her husband concealed from the mortgagee the fact that she had not authorized her name to be signed thereto. After the mortgage became due, Zinkeison brought suit to foreclose the same when he was confronted with the defense, pleaded by the wife and her husband, that her signature to the mortgage was unauthorized by her, and this was the first knowledge that he had that her signature thereto was a forgery. There were no intervening liens upon or conveyances of the property. Upon these facts the Supreme Court of Kansas said:

"The facts bring the case within the authority of Everston v. Bank, 33 Kan. 352, 6 Pac. 605, where it is held that if the money is loaned upon a forged mortgage, supposed to be valid, to be used, and which was used, to pay off a valid mortgage, the mortgagee or his assignee may be subrogated to the rights of the prior mortgage, if there are no intervening liens or incumbrances. * * * It is highly equitable that the plaintiff, who was without knowledge of the fraud in the execution of the mortgage, should be substituted to the rights of the prior mortgagees; and it would be very unjust to hold that Mrs. Lewis, who knew that her name had been signed to the mortgage, and that it was to be used to obtain money for the payment of existing incumbrances on her land, and remaining quiet and allowing the mortgagee to pay off valid mortgages existing against the property, might come into court, and ask, not only that the mortgage should be declared invalid, but also that prior valid liens which the mortgagee was induced to discharge should also be declared unavailing."

These cases and others to the same effect that might be cited are clearly distinguishable upon their facts, as well as in principle, from the case before us, and it is clear that they are not authority for subrogating the petitioner to the rights of the Hollicke mortgage; for here there is no defect in the execution of the mortgage of July 28th, nor lack of authority upon the part of the bankrupt corporation to make the same, and when made that mortgage was a valid and legally recordable instrument; but the petitioner neglected to deposit the same for record, and thus lost the lien thereof solely because of such neglect. The case falls within the firmly settled rule that equity will not afford relief to one by way of subrogation, or otherwise, to save him from the consequences of his own neglect when to do so will displace legal or equitable rights in the property accruing since, and because of, the extinguishment of the prior incumbrance. In short, subrogation to the rights of another is uniformly denied to those who have sustained a loss which they could have avoided by the exercise of reasonable diligence upon their part. 1 Story's Eq. (12th Ed.) §§ 138–146, and note; Garwood v. Eldridge, 2 N. J. Eq. 145, 34 Am. Dec. 195–199; Conner v. Welch, 51 Wis. 431, 8 N. W. bottom page 260; Kitchell v. Mudgett, 37 Mich. 81–85; Rice v. Winters, 45 Neb. 517, 63 N. W. 830; Ft. Dodge Bldg. Ass'n v. Scott, 86 Iowa, 431–434, 53 N. W. 283; Hargis v. Robinson, 63 Kan. 686, 66 Pac. 988; Coonrod v. Kelly, 56 C. C. A. 353–360, 119 Fed. 841; Bunn v. Lindsay, 95 Mo. 250, 7 S. W. 473, 6 Am. St. Rep.

48; Capen v. Garrison, 193 Mo. 335, 92 S. W. 368, 5 L. R. A. (N. S.) 838.

In Ft. Dodge Bldg. & Loan Ass'n v. Scott, above, the plaintiff had loaned money to the owner of real property to pay existing incumbrances thereon under an agreement with him that he should have a first lien upon the premises. The loan was made and the proceeds applied to the payment of the prior incumbrances as agreed, which were then satisfied of record and a new mortgage made to the plaintiff to secure its loan. A few days prior to the payment of the prior incumbrances and the making of the plaintiff's mortgage, a judgment was recovered against the mortgagor which became a lien prior to the plaintiff's mortgage. Upon discovering this, the plaintiff sought to enjoin the sale of the premises under the judgment, and to be subrogated to the rights of the holders of the prior liens whose debts were thus paid from the proceeds of its loan. The Supreme Court in denying the relief prayed said:

"The right to subrogation rests upon equitable grounds, and is never granted as a reward for negligence. While it may be true, as claimed, that no equities inhere in the defendant's lien, that it is simply a lien given by law, it is certainly as true that the plaintiff's claim is equally void of equities. The position of the plaintiff is the result of its own negligence. * * * An examination of the court records of the county on the day the loan was made would have informed the plaintiff of the existence of this judgment, and that it was a lien upon these lots, whether owned by both or either of the Baehrings. Without making this examination, which the most ordinary care required, the plaintiff made the loan, and accepted its mortgage. Surely equity will not reward such negligence by applying the doctrine of subrogation in favor of the negligent."

The other citations are to the same effect, and see especially, Conner v. Welch, Rice v. Winters, Coonrod v. Kelly, and Capen v. Garrison, and their citations.

The agreement of the bankrupt to procure an assignment to the petitioner of the Hollicke mortgage, or that he is subrogated to the rights of Hollicke, gave to him no right in or lien upon the property, and until such assignment was procured, or other lien given and recorded, the property remained unaffected by any such agreements, and if transferred in the meantime by its owner, or by operation of law, the title passes unaffected by such agreements. In re Great Western Mfg. Co., 152 Fed. 123–127, 81 C. C. A. 341.

It is said in the brief for the trustee that the petitioner's mortgage was made within the four months immediately preceding the bankruptcy, and is therefore a voidable preference. The fact, if it be a fact, that it was made within such four months, would not necessarily make it a preference. But, if it was so made, and accepted by the petitioner with reasonable cause to believe that a preference was thereby intended, that would be fatal under the bankruptcy act to the validity of the mortgage, and to the petitioner's claim to be subrogated to the rights of the Hollicke mortgage. German Bank v. United States, 148 U. S. 573–581, 13 Sup. Ct. 702, 37 L. Ed. 564; Long v. Farmers' State Bank, 147 Fed. 360, 77 C. C. A. 538, 9 L. R. A. (N. S.) 585; In re Great Western Mfg. Co., 152 Fed. 123–127, 81 C. C. A. 341. It does not appear from the facts as stipulated save by the merest in-

ference, and the trustee does not allege, that the mortgage was made within such four months, or that it was in fact a preference; but, however this may be, it is entirely plain that the petitioner has no lien under his mortgage, solely because of his own neglect in failing to deposit it for record and not because of any defect in the instrument, or wrong on the part of the bankrupt, or that it was in fact void, or a voidable preference. The petitioner's claim to be subrogated to the rights of the Hollicke mortgage is not in my opinion well founded.

But it is urged upon us that the trustee stands only in the shoes of the bankrupt and takes its property subject to all equities impressed upon it in its hands, and Hewitt v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, and York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, are cited in support of this contention. But the facts do not bring the case within the rule of those cases. In both of them the property involved was not the property of the bankrupt, but was held by him only under a conditional contract for its purchase; and it was held that the validity of such contracts as against purchasers of the property from or creditors of the bankrupt is to be determined by the local law. These cases and others are reviewed in the recent case of the Security Warehousing, Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117; and again in Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. ——, and it is there held that the trustee takes the property of the bankrupt in cases unaffected by fraud, subject to all equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provisions of the bankruptcy act. The facts in the case before us bring it within the rule of these later decisions and its determination is controlled by them. The positive provisions of the bankruptcy act applicable to the case before us are:

"Sec. 67a. Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

"Sec. 1 (9). 'Creditor' shall include any one who owns a demand or claim provable in bankruptcy. * * *"

"Sec. 67d. Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act."

"Sec. 70a. The trustee of the estate of a bankrupt, upon his appointment and qualification, * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

The property covered by the petitioner's mortgage was at the date thereof and at the time the petition in bankruptcy was filed the property of the bankrupt, and could then have been sold or otherwise transferred by it, or levied upon and sold under judicial process against it. Under section 67a of the bankruptcy act that mortgage, because not recorded, was not a lien against the bankrupt estate; and under sec-

tion 70a the property covered by it passed to the trustee free from its lien and from any equities the petitioner may have had therein because of the prior agreement with the bankrupt that it would procure an assignment to him of the Hollicke mortgage, or that he "is subrogated to the rights of Hollicke the payee of the note" secured by that mortgage. To carry the petitioner's claim to priority upon the property covered by his mortgage of July 28th, back to the date of the Hollicke mortgage, under the facts as disclosed by this record, would in effect nullify the plain provisions of section 67a of the bankruptcy act, and open the door to a method by which that section can be successfully evaded. Much that is said by Judge Sanborn in Re Great Western Mfg. Co., 152 Fed. 123–127, 81 C. C. A. 341, though said of an attempt to escape the consequences of a voidable preference might well be said of the petitioner's claim to priority in this case.

The burden is upon the petitioner to show by satisfactory proofs that he is entitled to priority of payment from the proceeds of the property covered by his mortgage of July 28th. In my judgment he has failed to do so, and his petition to revise should be denied.